LEONARD E. ELLIS, RAY SOLOMON, ALSO KNOWN AS RAY SOLOMAN, JOHN DOE AND RICHARD ROE, DEFENDANTS AND APPELLANTS, *v.* ELFORD J. NELSON, PLAINTIFF AND RESPONDENT.

No. 3647

July 31, 1951.                                                233 P.2d 1072.

*John Davidson,* of Reno, for Appellant Ray Solomon.

*Pike, McLaughlin & Furrh,* of Reno, for Appellant Leonard E. Ellis.

*Kearney & Adams,* of Reno, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an action to recover possession of a Platt house trailer and for damages for wrongful detention. From

judgment in favor of the plaintiff and from order denying new trial, defendants have appealed. Their defense to the action is based upon an alleged contract of sale of the trailer and we are here concerned with the question whether such a contract ever was actually consummated.

On February 18, 1948, respondent Nelson, owner of the Platt trailer, desiring to sell it, contacted appellant Solomon, who, under the name of "Ray's Motors," operated a trailer sales lot in Reno and was engaged in the business of buying and selling used cars and trailers. After discussion of the matter, Solomon was authorized to place the trailer on his lot for sale on consignment at a price which would net Nelson $3,000. Solomon was not given the title certificate, however. This was left with the Nevada Bank of Commerce in Reno, endorsed in blank, with instructions to deliver it to Solomon upon receipt of $3,000. Nelson and Solomon executed the following instrument:

> "No. 18                    February 18, 1948
>
> "Received of Dr. E. J. Nelson (1) 1947 Platt Trailer, Serial No. 4134 to be sold on consignment to pay above $3,000 when sold.
>
> "Approved by owner.
>
> > "E. J. Nelson
> > "Ray's Motors
> > "Ray Solomon
>
> "Title at Bank of Commerce"

On April 28, 1948, appellant Ellis contacted Solomon with reference to purchase of the trailer. Ellis was the owner of an M-System trailer which he wished to turn in as a trade allowance. Ellis and Solomon agreed upon terms. Solomon, however (as he, himself, testified), stated to Ellis "that there was only one catch to it; that it belonged to another party and I would have to contact him to see if the trade-in was agreeable."

Solomon in Ellis's presence then placed a telephone call to Nelson in California and secured Nelson's consent to

the trade allowance. Solomon, during that conversation, explained that he had a prospect, explained the necessity for a trade allowance and described the M-System trailer. He stated that he had appraised it for $1,950; that with such an allowance "the difference would be in cash." Ellis, by his own testimony, confirms this statement. Ellis also testified that he had been told by Solomon that the Platt's title certificate was at the bank and that the transaction would have to be cleared through the bank.

Nelson testified that during the conversation he instructed Solomon that the trade-in trailer would have to be independently appraised through the bank before any allowance could be made. Solomon flatly denied that any such condition was imposed. The trial court found that Ellis knew of no such condition. Nelson subsequently telephoned the bank to advise of the modification in terms of sale and confirmed this conversation with a letter of authority. In that letter an appraisal through the bank is made a condition to acceptance of any trade allowance.

Immediately following his telephone conversation with Nelson, Solomon advised Ellis that the deal was satisfactory and could go through. A form of conditional sale contract was then prepared by Solomon on printed forms which Ellis understood was to be used as the basis for financing the "cash" balance through the Pioneer Finance Company of Detroit, Michigan. This contract was signed by Solomon, representing himself as owner, and by Ellis as purchaser. The contract provided for sale of the Platt trailer to Ellis for the sum of $3,395 with a trade allowance in the sum of $1,950 shown as down payment. The balance, plus insurance and financing charges, covered by a promissory note, was to be paid by Ellis in monthly installments of $85.42 over a period of 24 months. The printed form contained a form of "assignment and guaranty" to the Pioneer Finance Company which was signed by Solomon warranting himself to be owner.

Solomon then delivered possession of the Platt trailer to Ellis and took delivery of the M-System trailer. Ellis requested a registration slip for the Platt trailer and was advised by Solomon that it would not be available until the transaction had been cleared through the bank. Ellis then instructed Solomon that when the transaction had cleared and the registration slip had been secured through the state motor vehicle department, it was to be mailed to him, giving Solomon an address to which to send it. Certain of the trailer equipment was not included in the sale to Ellis but was retained by Solomon.

Solomon did not thereafter report to Nelson on the transaction as concluded with Ellis. The M-System trailer was never appraised. Solomon never communicated with the bank relative to the sale. On May 8 Nelson wrote Solomon that, having heard nothing further, he assumed the deal had fallen through and would be willing to accept less than $3,000 as he was in need of cash. On May 11 Solomon telephoned Nelson, still refrained from reporting the true status of the Ellis transaction and falsely stated that while it had fallen through on the original basis it could still be concluded on the basis of a total sale price of $2,900 ($950 plus the trade-in allowance). On May 15 Nelson wrote to Solomon and to the bank that W. M. Kearney, Reno attorney, was thereafter to represent him in all matters relating to the trailer and that title papers were to be placed in Kearney's possession. Kearney thereafter attempted to reach Solomon by telephone. On June 5 Nelson wrote Solomon instructing him to turn the trailer over to Kearney. At about this time (the precise dates are uncertain), Kearney succeeded in reaching Solomon by telephone, and notified him that he must deliver either the trailer or $3,000; that no trade allowance would be considered. Shortly thereafter the check from the Pioneer Finance Company, on its acceptance of the assignment of the Ellis conditional sale contract, cleared through Solomon's bank, and the cash thereupon became

available to Solomon. In the meantime Ellis, in possession of the Platt trailer, had left Reno.

This action was brought by Nelson November 19, 1948. The trailer subsequently was located in Lincoln County, Nevada, and taken into possession on behalf of Nelson. During trial Solomon voluntarily deposited with the court the sum of $950 together with the title certificate of the M-System trailer. After trial by the court without a jury, judgment was rendered in favor of Nelson, declaring him owner and entitled to possession of the trailer (including the equipment in Solomon's possession) and for damages in the sum of $450 for wrongful detention. The judgment for damages was rendered against Solomon and Ellis jointly and severally. Motion for new trial was denied, and this appeal duly taken.

Ellis and Solomon contend that Ellis's right to possession is established by the contract of sale and that Solomon was authorized to enter such contract as agent for Nelson. Nelson contends that Solomon had no authority whatsoever to execute such a contract; that in so doing he exceeded his authority in two specific respects: (1) in failing to secure an independent appraisal of the M-System trailer before accepting it as trade allowance; (2) in failing to secure the balance in cash. Considerable of counsel's argument related to the question of the appraisal; to the failure of the trial court to make express findings on this point; to the weight of the evidence thereon. In the view of this court, however, the matter of appraisal is not essential to disposition of this appeal and is of factual interest only in indicating Nelson's motive in terminating Solomon's authority. Such authority was clearly terminated either by the letter of June 5, 1948, or by the telephone conversation between Kearney and Solomon, whichever was the earlier communication. The only question is whether, prior to such termination, a binding contract had already been reached between Nelson and Ellis through Solomon as duly

authorized agent of Nelson. In the view of this court no such contract had been reached for the reason that Solomon, in concluding the transaction as he had, exceeded his authority.

It is clearly established that Solomon's authority (with or without trade allowance) was to conclude a cash sale. Ellis's contract on which appellants here rely, was a conditional sale contract. The two are not reconcilable. A cash sale is generally regarded as one in which neither title nor possession is to be delivered until payment in full has been made. A cash sale contemplates no credit. See: 2 Williston on Sales (Revised edition) 324, sec. 341. "A sale for cash is a sale for the money in hand. * * * 'Cash' is money at command; ready money." Dazet v. Landry, 21 Nev. 291, 295; 30 P. 1064, 1066. "A positive direction to 'convert' the property assigned 'into cash as soon and upon the best terms possible for the best interests of our creditors,' can hardly be construed into a discretionary authority to sell on credit, * * *." Muller v. Norton, 132 U.S. 501, 508; 10 S.Ct. 147, 148; 33 L.Ed. 397, 399.

Appellants contend that the term "cash" should be construed as relating to the medium of payment rather than the time of payment; that cash ultimately was received by Solomon; that respondent Nelson can hardly have been injured in this respect so long as title was reserved until such time as the full cash payment had been made. As authority for their position they cite Commercial Credit Co. v. Barney Motor Co., 10 Cal.2d 718, 722; 76 P.2d 1181, 1183, to the effect that authority to sell for "cash" implies authority to sell for cash or its equivalent. That case involved a conditional sale contract which was promptly taken to a bank which promptly advanced cash on it. The opinion states, "That the full purchase price in cash was received by Negra [the agent for the owner,] upon the sale and

delivery of possession of the automobile cannot be disputed." The case thus is clearly distinguishable from the present case. The conditional sale contract in the cited case was merely a commercial means for consummating a cash sale. No rights as against the seller could be said to have arisen in the purchaser by virtue of the conditional sale contract itself until that contract had produced the cash upon which the sale itself was consummated.

Appellants contend that there is evidence to the effect that the cash was available to Solomon through clearance of the Pioneer Finance Company check prior to revocation of his authority; that under the cited decision the transaction was then the equivalent of a cash transaction; that Nelson's authorization of a cash transaction should be regarded as a continuing offer which was accepted and reduced to a contractual obligation when the cash became available to Solomon.

In this regard Solomon testified that to the best of his recollection the check cleared through the bank and was cashed the latter part of May. Appellants argue that termination of Solomon's authority came by the letter from Nelson dated June 5. Solomon's recollection as to dates, however, is demonstrated on more than one occasion throughout the record to be inaccurate. We regard the record as clearly establishing that his authority was terminated prior to his receipt of the cash.

On June 3 he wrote to Nelson:

"As a rule our Finance Co., takes approximately three weeks to complete their credit check-up on the purchaser and to forward their check to me. Since the three weeks period has elapsed, I phone to Pioneer Finance to find out just what the delay was. They told me this particular contract had taken a little longer than usual but they were sending me a check in the next mail.

"As soon as I receive it I will deposit it in my bank here in Reno and it will take approximately 5 days to

clear. As soon as it clears I will send you a check for $950 as agreed upon at the time of our phone conversation of May 11, 1948."

From this it would appear doubtful that the check had been received and had cleared through the bank prior to receipt of Nelson's letter of the fifth. Further, Solomon testified (on cross-examination by Mr. Kearney) :

"Your [Kearney's] conversation with me was before the check had cleared, stressing at the time that you would have one or the other, either Three Thousand Dollars or the trailer. I had spoken to you at that time the trailer was under a contract and that the check was being cleared through the Pioneer Finance Company at my bank. The reason I couldn't get the title from the bank or to you was on account of the check not being cleared, and at that time you mentioned to me specifically —I remember because it had me all up in the air, I didn't know what to do; 'I will have nothing to do with Nine Hundred Dollars; all I want is Three Thousand Dollars or the Platt trailer.' "

Accepting appellants' contention that Nelson's authorization constituted a continuing offer, it would still appear clear that such offer was withdrawn prior to any acceptance thereof.

Finally appellants contend that regardless of any limitations upon Solomon's actual authority he had apparent authority to conclude the transaction in the manner in which it was concluded by virtue of his possession of the trailer and the known fact that he was in the business of selling used trailers.

Apparent authority (when in excess of actual authority) proceeds on the theory of equitable estoppel; it is in effect an estoppel against the owner to deny agency when by his conduct he has clothed the agent with apparent authority to act. In this respect it is stated in 1 Mecham On Agency (Second Edition) 513, secs. 725, 726, (Liability by estoppel) :

"It is indispensable to keep in mind here that, as against the principal, there can be reliance only upon what the principal himself has said or done, or at least said or done through some other and authorized agent. The acts of the agent in question can not be relied upon as alone enough to support an estoppel. If his acts are relied upon there must also be evidence of the principal's knowledge and acquiescence in them.

"Moreover, in any case, the reliance must have been a reasonable one, consistent with the exercise of reasonable prudence, and the party who claims reliance must not have closed his eyes to warning or inconsistent circumstances. Authority is not 'apparent' simply because the party claiming has acted upon his conclusions. It is not 'apparent,' in contemplation of law, simply because it looked so to him. It is not a situation where one may read while he runs. It is only where a person of ordinary prudence, conversant with business usages and the nature of the particular business, acting in good faith, and giving heed not only to opposing inferences but also to all restrictions which are brought to his notice, would reasonably rely, that a case is presented within the operation of the rule. If the inferences against the existence of the authority are just as reasonable as those in favor of it, there can be no reliance within this rule."

In the case before us the only action of Nelson upon which Ellis relied was the giving of possession of the trailer to Solomon. As against this Ellis knew that Solomon did not own the trailer; that he was acting as agent for Nelson; that his authority was limited; that special consent to a trade allowance must first be secured; that Solomon had no authority to effect the transfer of title (that authority being with the bank). Any assumption on his part that Solomon was authorized to conclude the transaction on the basis of a conditional sale contract was based, not on the actions of Nelson, but on the statements of Solomon himself.

As authority (contra Mecham) for Ellis's right to rely on Solomon's representations, appellants cite Federal

Supply Co. v. Wichita Sales & Supply Co., Tex. Civ. App. 232 S.W. 879, 881. In that case the plaintiff authorized one Lee to sell a truck for $1,670, gave Lee possession of the truck and a deposit receipt signed in blank. He was instructed that no trade allowance was to be made without approval of plaintiff. Lee contacted defendant who offered to pay $470 and turn in a used truck reasonably worth $1,200. Lee stated he would have to have plaintiff's consent. A few days later he returned to defendant, falsely stated plaintiff had approved, received the cash and absconded. The court held for defendant stating:

"In this case it is found by the court the agent had the authority to sell upon the approval of the principal, and that its agents customarily exchanged trucks for second hand cars. The appellant [purchaser] dealt in view of this authority and custom. * * * It would seem where a principal has, by his voluntary act, placed an agent in such situation that a person of ordinary prudence, conversant with business usages, is justified in presuming the agent has authority to perform the particular act, and so deals with the agent, the principal is estopped as against the third person, from denying the agent's authority. * * * the court finds the appellant did not know of the fraud, and as a prudent man we see no reason why, under the circumstances, the appellant would not be entitled to rely upon the representations of the salesman in that particular. * * *"

The case emphasizes the factor of custom which was pleaded and proven and which is absent in the case before us. However, it does go far in that the purchaser there knew of the limitations on the agent's authority and relied solely on the agent's representations that the principal had approved.

One fact in the case before us, however, completely distinguishes the cited decision and disposes of all questions of apparent authority. That is the fact that Ellis knew of his own knowledge that Solomon's authority as

to the unpaid balance was limited to a cash transaction; that Nelson was anticipating the balance in cash; that neither a promissory note payable over a period of two years nor monthly payments of $85.42 would meet this condition. He also admitted knowing that his operation of the trailer was improper under the state motor vehicle laws in absence of a registration certificate or temporary certificate. He must have known that the transaction as concluded by Solomon, including delivery of the trailer, under all of these circumstances was without authority and was based solely upon Solomon's assumption that "cash" ultimately would become available through the Finance Company and that the situation at that time would right itself. That Ellis and Solomon may have assumed and expected that Nelson would voluntarily hold still until the situation had righted itself; that they may have proceeded to rely to their detriment upon such assumption and expectation, is not in itself sufficient to compel Nelson so to act. "Apparent authority loses all of its apparency when the third party knows that actual authority is lacking." Home Owners' Loan Corp. v. Thornburgh, 187 Okl. 699, 701; 106 P.2d 511, 512. "Any apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, and what he is not, empowered to do for his principal; * * *." 2 C.J.S. 1189, Agency, sec. 92a.

Appellants assign as error failure of the trial court to make any finding of fact relative to the issue of agency. The court did find as follows: "That said purported sale was made contrary to the instructions of plaintiff and without any authority therefor, and was made by said Ray Solomon in excess of his authority." In the light of such finding we feel appellants' contention to be without merit.

The judgment of the trial court and its order denying new trial are affirmed, with costs.

BADT, C. J., and EATHER, J., concur.