JOHN LUKEY AND EDNA LUKEY, APPELLANTS, v. RAY P. SMITH, RESPONDENT.

No. 4397

October 23, 1961

365 P.2d 487

*Donnell Richards,* of Reno, for Appellants.

*Ernest S. Brown* and *Jack I. McAuliffe,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This is an appeal from a judgment awarding respondent a real estate commission based upon a written contract. Such contract comprised a written proposal by St. Mary's Hospital, Inc. to purchase property owned by appellants and a written acceptance of such proposal which contained the agreement of appellants to pay to respondent the sum of $1,400 for his services in procuring the purchaser.

In their appeal from the judgment, appellants assert that the lower court erred in holding (1) that respondent had a contract of employment with [appellants]; (2) that a binding contract was entered into between

appellants and St. Mary's Hospital; and (3) that respondent had procured a purchaser ready, able, and willing to purchase the property evolved. We hold that none of these assignments has merit.

The written proposal to purchase recited that St. Mary's Hospital, Inc. agreed to purchase, through respondent as agent, the property described for $28,000, payable $8,000 cash, with the balance (secured by a first deed of trust) payable in five annual installments of $4,000 each, commencing one year from date of conveyance, without interest. Provisions of the contract provided for such items as taxes, insurance, the furnishing of a good and sufficient deed, policy of title insurance showing good merchantable title and other items not material to this appeal.

A written acceptance of the offer, bearing the names of appellants, appears in the following language: "I/WE as seller/sellers of the property mentioned above hereby irrevocably accept the above proposal and will comply with the conditions therein, and agree to pay Ray P. Smith $1,400 for his services in procuring the purchaser. Ray P. Smith is hereby authorized to give appropriate instructions to the escrow holder for the closing of this transaction. I/WE further agree that in the event said purchaser fails to complete said agreement, and I/WE shall not exercise my/our option to specifically enforce said agreement then Ray P. Smith shall retain from the earnest money deposit the amount of his full commission on the accepted purchase price, and upon payment of the balance thereof, if any remain, to the undersigned, the said Ray P. Smith shall thereupon be released from any further liability hereunder." The foregoing is in turn followed by the following memorandum: "In case title is impossible to convey there shall be no commission charged."

It is admitted that in such acceptance of the offer Edna Lukey signed her own name and also the name of her husband John Lukey. The trial court found as follows:

"2. That on April 20, 1959, defendant Edna Lukey signed and executed a contract to sell the premises

known as 330 Elm Street, Reno, Nevada. That said agreement provided for a real estate commission to be paid to plaintiff in the sum of $1,400.

"3. That defendant John Lukey did not sign said agreement but that said agreement was signed by defendant Edna Lukey in his presence and at his request and direction.

"4. That plaintiff had then produced a buyer ready, willing and able to purchase defendants' property on the terms and conditions required by defendants."

(1) It is unnecessary for us to quote those portions of the transcript describing the execution of the acceptance of the offer and the circumstances under which Mrs. Lukey signed her husband's name. It is sufficient to say that the evidence amply supports the court's finding. This being so, it follows that John Lukey, as well as Edna Lukey, was bound by the written acceptance of the written offer to buy and the written promise to pay the commission.[1]

Commencing with the leading case of Gardner v. Gardner, 1850, 5 Cush., Mass. 483, to the latest citation in 1961, 80 C.J.S., Signatures, sec. 6, p. 1291, Pocket Supp., sec. 6, n. 37, citing Barrett v. City of Fayetteville, 248 N.C. 436, 103 S.E.2d 500, we find approval in virtually every jurisdiction of the United States of the rule stated as follows: "Generally, a signature may be made for a person by the hand of another, acting in the presence of such person, and at his direction, or request, or with his acquiescence, unless a statute provides otherwise. A signature so made becomes the signature of the person for whom it is made, and it has the same validity as though written by him." Mechem, Outlines of Agency, sec. 28 (4th ed. 1952), adds to the statement of such

---

[1] In oral argument appellants earnestly insisted that the asserted infirmity in the execution of the acceptance of the offer to buy likewise affected the agreement to pay the broker's commission because both were found in the same instrument and that such instrument merged both into one inseparable contract. It is apparent however, that the contract to pay the commission is an entirely separate contract. Carter v. McCall, 193 S.C. 456, 8 S.E.2d 844, 151 A.L.R. 641, and annotation id. 648.

rule, the following: "In such a case the writer is sometimes referred to as an 'amanuensis' and the derived rule as the Amanuensis Rule." Distinct from this is the rule arising from delivery and acts of recognition and adoption of the instrument, sometimes referred to as the "adoption rule." For this we find approval in Picetti v. Orcio, 57 Nev. 52, 58 P.2d 1046, 67 P.2d 315. The so-called amanuensis rule is so uniformly recognized that we would add nothing to the law by quoting or even citing the various texts and hundreds of cases. We may refer however to 37 C.J.S., Statute of Frauds, sec. 202, p. 696; 26 C.J.S., Deeds, sec. 34, p. 663; 27 C.J., Statute of Frauds, sec. 356, p. 287; Mondragon v. Mondragon, 113 Tex. 404, 257 S.W. 215, and authorities therein cited.

This disposes of appellants' main assignment of error.

(2, 3) Nor is there any support for the contention that there was error in holding that a binding contract was entered into between appellants and St. Mary's Hospital. The precise finding in this regard was that respondent had produced a ready, willing, and able buyer on the terms and conditions required by appellants. Appellants support this assignment by the testimony of appellant John Lukey to the effect that he told the hospital that he didn't care to sell and that Sister Seraphine, who was handling the transaction for the hospital and had signed the offer to purchase, said, "that if I didn't want to sell, she didn't want to buy it." This, as a matter of law, cannot be said to counteract the conclusion that respondent had produced the hospital as a willing buyer under its written offer. At the time of the conversation just quoted, the commission had already been earned. The relations of the buyer and seller might have been changed in many ways—by the refusal of the seller to sell or the refusal of the buyer to buy. Litigation might have ensued, whether for damages for a breach or for specific performance. Or the parties might by a new contract have canceled the existing one. None of these things would affect the liability of appellants for the

broker's commission. Nor is there any merit in the contention that respondent had not met his burden of proof, because of his failure to prove at the trial, through proper officers of the hospital, that it was still ready, able, and willing to purchase under the terms of its written offer accepted in writing by appellants. The authority for the execution of that offer is not attacked. The executed written offer was admitted in evidence without objection.

(4) Appellants maintain that respondent may not recover by reason of the clause, "In case title is impossible to convey there shall be no commission charged." In support of this, appellants recite the derivation of title as follows: Appellants were married in 1919. In 1929 the property was conveyed to Edna. In 1931 John quitclaimed to Edna, and on the same day Edna filed a declaration of homestead on behalf of herself and John. In 1934 Edna and John executed a mortgage on the property, which was released some 14 years later. Any asserted infirmities in the title growing out of such history merely reflect upon the validity of the acceptance of the hospital's offer without John's actual signature. As we have already approved the court's finding that his name was signed by Edna "in his presence and at his request and direction," consideration of the point thus raised becomes unnecessary.

The judgment is affirmed.

McNAMEE and THOMPSON, JJ., concur.