EDITH M. EVANS, Also Known as EDITH MARY EVANS, Appellant, v. PAUL E. DORMAN, Respondent.

No. 4873

June 2, 1965                                402 P.2d 652

*Vargas, Dillon, Bartlett & Dixon* and *Robert W. Marshall,* of Reno, for Appellant.

*Guild, Guild & Cunningham,* and *David W. Hagen,* of Reno, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

The appeal is from a judgment ordering Edith Evans to pay a real estate broker's commission of $22,500 to Paul Dorman. Dorman had produced a purchaser for the Evans ranch as evidenced by a deposit receipt signed by Edith Evans, as seller, and Lindero Investment Co., Inc., as buyer, which document contained an express

promise by Evans to pay Dorman, her broker, a commission of $22,500.[1] The suit below proceeded mainly upon that promise, though an alternative claim for quantum meruit relief was also asserted. We do not deal with the alternative claim, for on this record it is clear that the express promise to pay the commission is legally enforcible. We affirm.

1.  The main appellate contention is that a broker's commission was not earned because the terms of the ranch sale, as disclosed by the deposit receipt, are different from those specified in the exclusive listing agreement by which Evans authorized Dorman to act as her broker. When the two documents are compared, differances in the terms of sale are apparent. The exclusive listing agreement provided for a sales price for the ranch, range, water rights and equipment of $450,000 net to the seller, and further provided that the buyer would purchase "all your cattle at market for cash." The deposit receipt and agreement of sale, later signed by the seller and buyer, specified the sales price of the ranch, range, water rights and equipment, to be $450,000. However, this was not net to the seller, for she also promised to pay therefrom a $22,500 broker's commission to Dorman. Furthermore, the terms of the deposit receipt excluded from the sale the seller's "present home and residence, * * * together with that area consisting of the old home in Section 12 and adjacent to highway 395." Finally, the deposit receipt did not specifically require the buyer to purchase the cattle at market price or at any price. It did, however, give the seller permission "to remain on the property until June, 1962, to care for the livestock until payment is made therefore by the Buyer." For reasons to be mentioned later, we

---

[1] The promise reads: "The undersigned accepts the offer on the reverse side hereof and agrees to sell the property described therein on the terms and conditions therein set forth. The undersigned agrees to pay Broker therein named and employed by the undersigned to sell property, a commission in the sum of $22,500.00 or one-half of the amounts paid by Buyer and retained by Seller as liquidated damages, provided such one-half shall not exceed the full amount of said commission. The undersigned acknowledges receipt of a copy hereof. Dated November 27th, 1961. Edith M. Evans, Seller."

find it unnecessary to decide whether the quoted provision as to the livestock contemplated the sale of the ranch and livestock as a package, or envisioned separate transactions, for in either event it is our view that the broker earned his commission.

The fact that changes were made in the terms of sale originally specified in the exclusive listing agreement does not preclude liability for a broker's commission, if the new terms of sale are accepted by the seller and the buyer was brought to the seller by her agent. In Engel v. Wilcox, 75 Nev. 323, 340 P.2d 93, this court approved the following quotation: "Generally speaking, a real estate broker has earned his commission when he has brought to the vendor a purchaser who is ready, willing and able to buy the property upon the terms on which the agent is authorized to sell, or when a written contract upon any terms acceptable to the seller has been entered into with a purchaser originally brought to the vendor by the agent." Here Dorman produced the buyer and there can be no doubt but that the new terms of sale as set forth in the deposit receipt and agreement were acceptable to the seller, Edith Evans. She signed the document manifesting her acceptance, after a full discussion with her attorney. Indeed, as the result of her consultation with counsel, she further modified the proposal by adding the proviso that there be reserved from the sale her homesite. The buyer then signed, and a deal was made. Pursuant to that agreement the buyer deposited $130,000 in escrow with Pioneer Title Insurance Company. When that agreement was made the broker earned his commission. Engel v. Wilcox, supra; Lukey v. Smith, 77 Nev. 402, 365 P.2d 487.

2. The agreement to sell and buy was not carried out. Evans, the seller, refused to honor her promises to the buyer and to her broker. She seeks to justify her refusal to perform on the flat proposition that the ranch was not to be sold without the cattle and the parties never reached an understanding on the price to be paid for the cattle. As before noted, the exclusive listing agreement provided that the cattle were to be sold "at

market." The deposit receipt and agreement later signed modified the exclusive listing agreement in the respects indicated and, as to the cattle, stated only that "Edith M. Evans shall have the right to remain on the property until June, 1962, to care for the livestock until payment is made therefore by the Buyer." This proviso was not a part of the paragraph of the agreement describing the property to be sold, purchase price and terms of payment, but was instead contained in that part of the agreement relating to the time when possession of the ranch was to be delivered to the buyer. Nor does the proviso specify a price for the cattle.

The lower court thought it permissible to treat the proviso in either of two ways. If it was meant to require a simultaneous sale of the cattle to the buyer of the ranch, then the price to be paid for the cattle was the market price originally specified in the exclusive listing agreement and not later modified. If so treated, the record shows that the broker, with the consent of the buyer and the seller's attorney, arranged to have an expert go to the ranch and appraise, classify and count the cattle, but that the seller refused such expert permission to perform his task when he arrived there for that purpose. Thus, the seller prevented the buyer from ascertaining the market value of the cattle, nor would she take appropriate steps to have that determination made. She may not now claim that the broker failed to procure a ready, willing and able buyer for her ranch and cattle when his performance as to the cattle was prevented by her conduct. 12 Am.Jur.2d, Brokers § 199, pp. 940–941; cf. Cladianos v. Friedhoff, 69 Nev. 41, 240 P.2d 208.

On the other hand, if the proviso is viewed as contemplating a separate sale of the cattle (or to put it differently—two sales, one for the ranch on the terms specified, and the other for the cattle "at market,") the contract may properly be treated as severable in character, in which case the broker earned his commission for the agreed sale of the ranch. Cf. Bariel v. Tuinstra, 45 Wash.2d 513, 276 P.2d 569. We hold that the judgment below is sustainable on either basis.

324

3.  Next we are urged to set aside the judgment below because, in California litigation, the buyer failed in its quest to obtain specific performance from the seller. That case is now on appeal. Whatever may have motivated the California trial court to deny specific performance to the buyer, it does not necessarily follow therefrom that the broker must fail here in his suit for a commission. In Lukey v. Smith, 77 Nev. 402, 365 P.2d 487, this court wrote: "The relations of the buyer and seller might have been changed in many ways—by the refusal of the seller to sell or the refusal of the buyer to buy. Litigation might have ensued, whether for damages for a breach or for specific performance. Or the parties might by a new contract have canceled the existing one. None of these things would affect the liability of appellants for the broker's commission." The execution of the deposit receipt and agreement of sale by the seller is conclusive proof that she was satisfied with the buyer's qualifications and ability to perform. The broker procured a buyer who was ready, willing and able to buy and who was accepted by the seller. His commission was earned. Deeble v. Stearns, 82 Cal.App.2d 296, 186 P.2d 173. The subsequent dispute between the buyer and seller cannot, in these circumstances, serve to diminish or destroy the validity of the broker's claim to a commission. Austin v. Richards, 146 Cal.App.2d 436, 304 P.2d 132; Curtis v. Mortensen, 1 Utah 2d 354, 267 P.2d 237; Taylor v. Russell, 194 Cal.App.2d 816, 15 Cal.Rptr. 357. The appellant's main authority, Lawrence Block Co. v. Palston, 123 Cal.App.2d 300, 266 P.2d 856, is inapposite. There the buyer's promise to perform was illusory. In any event, the language of the District Court of Appeals in that case is criticized and disapproved by the California Supreme Court in Mattei v. Hopper, 51 Cal. 2d 119, 330 P.2d 625.

4.  Finally the appellant charges that her failure to win the case was due to the bias and prejudice of the trial judge, and points to the following statement (among others) in his written opinion as an example:

"Miss Evans is an arrogant, haughty, irrepressible person. She has little ability to see the truth when it doesn't suit her purpose and will say anything that suits her whim of the moment or to accomplish her objectives. She is a matriarch who demands that she rule and none, in her opinion, should dare encroach upon what she considers as her prerogatives." Of course the charge was first made after the case was lost. Until the moment of decision the appellant and her counsel were apparently satisfied with the manner in which the case had been handled by the judge. The pre-trial proceedings, transcript of the trial, and twenty-page written opinion reflect the great care and concern of the court for the rights of the litigants and a thorough analysis of the evidence and the law. The quoted statement is simply the candid observation of one charged with the duty of decision and is to be encouraged, not denounced. Our task on review is less difficult when given an explanation by the trier of fact. We find the charge of appellant wholly unwarranted.

We have considered other assigned errors and deem them to be without merit.

Affirmed.

BADT, J., and ZENOFF, D. J., concur.