R. GORDON BELL, DBA GORDON BELL REALTY, APPELLANT, v. VERA KRUPP VON BOHLEN UND HALBACH AND BANK OF CALIFORNIA N. A. AND BANK OF NEVADA, CO-EXECUTORS OF THE ESTATE OF VERA KRUPP VON BOHLEN UND HALBACH, RESPONDENTS.

No. 5918

April 15, 1970

467 P.2d 1013

*Wiener, Goldwater & Galatz, Ltd.,* and *J. Charles Thompson,* of Las Vegas, for Appellant.

*Lionel & Sawyer, Ltd.,* of Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

Appellant R. Gordon Bell commenced this action in the

district court to recover $110,000, representing a broker's real estate commission allegedly due him from Vera Krupp von Bohlen und Halbach.[1] The respondents moved before trial for a summary judgment. NRCP 56, paragraphs (b) and (c).[2] The district judge granted the motion and dismissed Bell's complaint with costs. Hence, this appeal. We affirm the court's order granting summary judgment in favor of Mrs. Krupp.

1. *The Facts.*

Sometime prior to 1966, R. Gordon Bell, a licensed real estate broker in Las Vegas, discussed with Mrs. Krupp the possibility of selling the Krupp ranch located in Clark County. Bell claimed in his deposition, which was submitted to the court, that Mrs. Krupp had *orally* listed the property with him and that she had agreed to pay him a commission for sale of the property equal to 10 percent of the sales price.

In early 1967, Bell discussed with representatives of Clark County the possibility of selling the ranch to the County for the total purchase price of $1,110,000. In March 1967, at a "recessed regular session", the County Commissioners passed a resolution to purchase the ranch for $1,110,000, ". . . including all appurtenances, furniture, fixtures, appliances and personal property for park, recreation and other purposes." Mr. David Henry, the County Manager, drew and delivered to Bell a $10,000 check as a deposit on the purchase price. Bell accepted the check and went immediately to Chicago Title

---

[1]Mrs. Krupp died after the commencement of the action. The other respondents, Bank of California N. A. and Bank of Nevada, her appointed executors, were named defendants in a supplemental complaint.

[2]NRCP 56 reads in relevant part:

"RULE 56. SUMMARY JUDGMENT

". . .

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Insurance Company in Las Vegas and directed the preparation of escrow instructions for the purpose of consummating the sale. Bell took the prepared escrow instructions to the Clark County District Attorney, secured his approval and signature, and left by plane for Los Angeles to obtain Mrs. Krupp's approval.

Mrs. Krupp signed the instructions. Before she did so, however, she shortened, by interlineation, the escrow period from 90 to 60 days. Bell returned to Las Vegas and presented the escrow instructions to the Commissioners. They apparently were concerned about the change from 90 to 60 days, made by Mrs. Krupp, and at their regular meeting on April 20 they voted that, in view of Mrs. Krupp's modification of the escrow terms, they would hold the matter in abeyance.[3]

In June 1967 the ranch was sold to Richard Gray, Trustee for the Hughes Tool Company. Bell was not involved in that sale.

2. *The Order for Payment of Broker's Fees.*

When Bell directed the preparation of the escrow instructions, which he signed, he provided for the payment of his commission from the proceeds of the sale. At that time Bell also caused to be prepared an "ORDER TO PAY COM-MISSION TO BROKER," which he and Mrs. Krupp signed.[4] The Order provided that Bell's commission would be paid

---

[3]Commissioner Ryan had earlier initialed the Krupp change.

[4]"ORDER TO PAY COMMISSION TO BROKER

| "Date | March 23, 1967 |
|---|---|
| "Escrow No. | LV–23521 KS |

"CHICAGO TITLE INSURANCE CO.
   "Nevada Title Office

"You are hereby instructed and directed to Pay Real Estate Brokers Commission from the funds due me at the close of your above numbered escrow as follows:

| | "BROKER | | AMOUNT |
|---|---|---|---|
| "1 | GORDON BELL REALTY | | $110,000.00 |
| "382–9060 | BERT BAUER REALTY | | |
| "2 | xxxxxxxxxxxxxxxxxxxxxxxxxxx [sic] | | |
| "3 | Ackerman Realty | | |

"Other Instructions: It is understood and agreed that the commission shall be paid in the following manner $50,000.00 out of the close of escrow and $30,000.00 each out of the two succeeding payments, balance shall bear 7% int. In the event payment is made

from the receipts of the sale of the property to the County. Bell, however, in his deposition now contends that Mrs. Krupp had orally agreed with him sometime prior to 1967 to pay a sales commission upon Bell's finding a purchaser who was *acceptable* to Mrs. Krupp; that when, as in this case, Mrs. Krupp signed the escrow instructions, she accepted the County as the purchaser of the ranch; and that at that moment Bell had earned and was entitled to his commission.

In his argument, Bell insists that whether the sale was consummated or whether Mrs. Krupp could have sued the County successfully to enforce the sale is, in this case, entirely irrelevant. We do not agree. Whether a seller could successfully sue a buyer might be irrelevant in certain situations, but in the instant case the relationship between the buyer and the seller, insofar as it had to do with the consummation of the sale, is relevant to the issue of the broker's commission. It is true that the general rule, which has been stated many times, is that, in the absence of some other agreement, a broker has earned his commission when he has produced a buyer ready, willing, and able to purchase the property upon the terms prescribed by the seller. Evans v. Dorman, 81 Nev. 319, 402 P.2d 652 (1965); Lukey v. Smith, 77 Nev. 402, 365 P.2d 487 (1961); Engel v. Wilcox, 75 Nev. 323, 340 P.2d 93 (1959).

The payment of a broker's commission, however, may be predicated on a specified condition. As summarized in 10 S. Williston, Contracts, § 1287A at 978 (3d ed. W. Jaeger 1967):

"Whatever may be the customs and usages respecting the broker's right to a commission, when he presents a purchaser ready, willing and able to perform, the parties by their agreement may make this right dependent on an express condition

---

in full prior to the maturity date entire commission to be paid in full at that time.

"Vera Krupp Von Bohlen und Halbach

"Vera Krupp Von Bohlen und Halbach

"The foregoing order is hereby approved

GORDON BELL REALTY
BY:   R. Gordon Bell

Broker

xxxxxxxx [sic]

Sellers escrow and title fees to be paid by broker—R. Gordon Bell"

such as actual sale. Or, other qualifications may be incorporated such as 'out of purchase money,' 'cash payment,' 'upon effecting a sale,' 'upon consummation of sale,' 'on the closing of title,' 'when title passed,' 'if deal went through,' or, 'on the date formal transfer is made.'

"Payment of the broker's commission may also be predicated on specified conditions precedent, or other factors affecting the coming into being of a valid contract." (Footnotes omitted.) See also Fitch v. LaTourrette, 75 Nev. 484, 346 P.2d 704 (1959); Cochran v. Ellsworth, 272 P.2d 904 (Cal. App. 1954); Wilson v. Security-First Nat'l Bank, 190 P.2d 975 (Cal.App. 1948).

We conclude that a broker who is seeking a commission (1) on different terms from those provided in escrow instructions and (2) on an order of payment for his fees, both of which he signed, may not now be permitted to deny his representations on the basis of a different and prior oral agreement. Cf. Aldabe v. Adams, 81 Nev. 280, 402 P.2d 34 (1965).

The order granting summary judgment is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.