ESTATE OF MAYER GREENBERG, DECEASED, DANIEL B. GREENBERG, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF MAYER GREENBERG, RUTH C. GREENBERG, LOUIS W. CORWIN, ERIC T. STANIEK, MATTIE P. STANIEK, HAROLD A. HAYTIN, LOIS HAYTIN AND PHILLIP A. GREENBERG, APPELLANTS, v. ANDY SKURSKI, RESPONDENT.

No. 10691

November 2, 1979                    602 P.2d 178

*Beckley, Singleton, DeLanoy & Jemison,* of Las Vegas, for Appellants.

*Foley Brothers,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Andy Skurski, a licensed real estate broker, commenced this action against members of an investment group to recover a real estate commission allegedly earned during negotiations for the sale and purchase of the Starlite Industrial Park. The district court entered judgment in favor of Skurski for the sum of

$66,875. That judgment imposed a joint and several liability against the members of the investment group.

The district court found that one of the members of the investment group owning the Starlite Industrial Park, Eric Staniek, was a subagent, empowered to negotiate for and bind all members, and that Staniek had made a deal with Skurski to sell the Industrial Park to the Janitell brothers. Moreover, the court also found that the Janitell brothers were ready, willing and able to purchase the property upon terms prescribed by the sellers. There is no evidence possessing substance to support either finding. For reasons hereafter expressed we reverse and direct the entry of judgment for appellants-defendants. United Mortgage Co. v. Hildreth, 93 Nev. 79, 559 P.2d 1186 (1977).

1. Starlite Industrial Park was owned by nine persons as tenants in common.[1] Their ownership was subject to a deed of trust in favor of Nevada Savings and Loan Association to secure a loan in the sum of $693,000. Their ownership also was subject to the provisions of a sales agreement between them and Nevada Savings and Loan designating specific prices to be paid for the release of certain lots within certain blocks of the Industrial Park as those lots were sold.

The tenants in common, by written document, appointed Mayer Greenberg agent and attorney in fact for each of them with regard to the Industrial Park and the loan thereon from Nevada Savings and Loan Association. No one else was authorized to act for them.

A real estate consultant, working on behalf of the owners, sent to Skurski and other real estate brokers a 73-page document containing a detailed description of the Starlite Industrial Park. Thereafter, Skurski showed the property to the Janitell brothers who were interested in purchasing commercial property in the Las Vegas area.

Negotiations between some of the sellers and Skurski and the Janitell brothers commenced in early June 1973, and on August 11, 1973, Eric Staniek advised Skurski that they had a deal.

As already noted, the district court found that Eric Staniek was a subagent of Mayer Greenberg with authority to act for all of the tenants in common owning the Industrial Park. We perceive no basis for such a finding. The document appointing

---

[1]The owners were Mayer Greenberg, Ruth Greenberg, Phillip Greenberg, Daniel Greenberg, Harold Haytin, Lois Haytin, Louis Corwin, Mattie Staniek and Eric Staniek. Mayer Greenberg died before this action was brought and his estate was named a defendant in his stead.

Mayer Greenberg agent and attorney in fact for each tenant in common does not authorize the appointment of a subagent. There is no evidence to suggest that Ruth Greenberg, Phillip Greenberg, Daniel Greenberg, Harold Haytin, Lois Haytin, Louis Corwin or Mattie Staniek authorized Eric Staniek to act for them.

A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible. Restatement (Second) of Agency § 5(1) (1957). We read nothing in the record suggesting that the principals empowered Mayer Greenberg to appoint a subagent, nor may the record be read to indicate that Mayer Greenberg agreed with his principals to be responsible for the conduct of Eric Staniek.

The agency relationship normally is grounded on the trust and confidence the principal places in his agent. Consequently, the law has come to look upon that relationship as personal in nature. It is for this reason that agency duties ordinarily cannot be delegated without the express authority of the principal where the duties involve any personal discretion, skill or judgment. Knudsen v. Torrington Company, 254 F.2d 283 (2d Cir. 1958).

There is no question but that the duties placed upon Mayer Greenberg to act for the principals with regard to the Starlite Industrial Park involved the personal discretion, skill or judgment of Greenberg. His personal performance was called for and his duty to so perform was not assignable to Eric Staniek or anyone else without the consent of his principals. Sumner v. Nevin, 87 P. 1105 (Cal.App. 1906) (holding that a contract entered into between a broker and the owners of a tract of land, by which the broker was given the exclusive selling rights of the land, being founded on personal qualities, was not assignable without the consent of the parties thereto).

2. A precondition of entitlement to a broker's commission is that he produce a buyer, ready, willing and able to purchase the property upon terms prescribed by the sellers. Bell v. Krupp, 86 Nev. 247, 467 P.2d 1013 (1970). This did not happen. The ownership of the Industrial Park was subject, not only to a deed of trust in favor of Nevada Savings and Loan

Association, but also to the provisions of a sales agreement with that Association designating specific prices to be paid for the release of certain lots within certain blocks of the Industrial Park as those lots were sold.

The parties to this litigation as well as the Janitells deemed the release clause to be a very important element in a sale if one were to occur. The existing release clause designated in the agreement with Nevada Savings and Loan was not acceptable to the Janitells. A different release clause having the approval of Nevada Savings and Loan was never agreed upon between the sellers and the Janitells or Skurski. Therefore, it is clear that the broker did not meet the precondition of entitlement to a commission.

The judgment below is reversed and the cause is remanded with direction to enter judgment for defendants-appellants.

MOWBRAY, C. J., and MANOUKIAN, J., concur.

BATJER, J., dissenting in part and concurring in part:

Although I dissent from the majority's holding that the record does not support the district court's finding that Staniek was a sub-agent empowered to negotiate for and bind all members of the investment group in its sale of the Starlite Industrial Park to the Janitell brothers, I concur in the result upon the reasons recited by the majority that respondent Skurski did not produce a buyer, ready, willing and able to purchase the Industrial Park upon the terms prescribed by the sellers.

GUNDERSON, J., dissenting:

Respondent, a licensed real estate broker, brought suit against appellants, members of an investment group, for payment of a real estate commission allegedly earned during negotiations for the sale of real property. The district court awarded respondent $66,875 plus interest, and this appeal followed.

In October, 1972, Mr. Silverson, a real estate consultant working on behalf of appellants, sent respondent a 73-page document containing a detailed description of commercial property owned by appellants in Las Vegas, Nevada. Respondent subsequently showed the property to the Janitell brothers who were interested in investing in commercial property in the Las Vegas area.

The Janitells, respondent, some of the appellants, and Silverson met in early June, 1973, in Los Angeles, California to discuss the sale of appellants' property. At that meeting some of the details of the proposed purchase were worked out.

On August 8, 1973, appellant Mayer Greenberg, to whom the other appellants had executed a power of attorney, called respondent to revoke the original offer, but gave the Janitells 10 days to accept another proposal. On August 11, 1973, respondent called Mayer Greenberg's office, talked to appellant Staniek, and accepted the August 8, 1973 offer.

There was evidence presented at trial that an employee of Nevada Savings and Loan drafted escrow instructions in response to a call from appellant Staniek, in accordance with the agreement made on August 11, 1973. Subsequently, appellants accepted an offer from another party and the deal with the Janitells was never consummated.

Appellants contend (1) negotiations with one member of the investment group were insufficient to bind the remainder of the group; (2) there was insufficient evidence to sustain the trial court's finding that respondent earned his commission; and, (3) the pre-judgment interest award was improperly calculated.

1. Appellants argue that since Mayer Greenberg was attorney-in-fact for their investment group, he, and not Staniek, was the only one who had authority to negotiate on behalf of the group. Therefore, they conclude, since it was appellant Staniek, and not Mayer Greenberg, to whom respondent communicated on August 11, 1973, we must find that Staniek was acting as a sub-agent of Mayer Greenberg in order for there to be sufficient evidence of an agreement to purchase the property.

Such authority may be found from the facts adduced at trial. *Cf.* Nevada Nat'l Bank v. Gold Star Meat Co., 89 Nev. 427, 514 P.2d 651 (1973); Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072 (1951); Cleaveland v. Gabriel, 180 A.2d 749 (Conn. 1962). The evidence shows that Staniek frequently took Mayer Greenberg's phone calls, and acted for Mayer Greenberg on behalf of the group in writing letters and transacting business. There is no evidence that any of his acts were subsequently repudiated by Mayer Greenberg, or any other member of the investment group. Further, it is undisputed that on August 11, 1973, respondent was calling Mayer Greenberg's office when Staniek took the call and made representations on behalf of the Greenbergs.

The evidence of record is sufficient to find that Mayer Greenberg was holding out Staniek as his agent.

2. The general rule is well settled that, in the absence of some other agreement, a broker has earned his commission when he has produced a buyer ready, willing, and able to purchase the property upon the terms prescribed by the seller. Bell

v. Krupp, 86 Nev. 247, 467 P.2d 1013 (1970); Evans v. Dorman, 81 Nev. 319, 402 P.2d 652 (1965); Lukey v. Smith, 77 Nev. 402, 365 P.2d 487 (1961); Engel v. Wilcox, 75 Nev. 323, 340 P.2d 93 (1959). It is not necessary for the sale to be consummated. Engel v. Wilcox, *id*.

The district court found that respondent had produced a ready, willing, and able buyer. Appellants contend there is insufficient evidence to support this conclusion because, although Ralph Janitell testified that he was willing and able to buy the property, there had been no agreement as to material terms of the agreement.

The district court found that the August 11, 1973 phone conversation between appellant Staniek and respondent (acting on behalf of the Janitells) evidenced agreement as to material terms. This finding is substantiated by the fact that appellant Staniek asked Nevada Savings and Loan to prepare escrow instructions in accordance with that agreement.

"If the evidence, though conflicting, can be read to support [the findings of fact], this court must approve the trial court's determinations." Shell Oil Co. v. Ed Hoppe Realty Inc., 91 Nev. 576, 578, 540 P.2d 107, 108 (1975). *See also* Havas v. Carter, 89 Nev. 497, 515 P.2d 397 (1973). While there is certainly conflicting evidence here, there is, nevertheless, sufficient evidence to support the district court's findings.

3. The district court awarded respondent $66, 875, together with simple interest at 7 percent per annum. This sum was based upon the draft escrow instructions which provided for serial payments of premiums by the buyers to the sellers.

Respondent was to receive 5 percent of each of these serial payments, plus 7 percent interest from the date each payment was due to the date of judgment. The escrow instructions provided for payment of $250,000 on November 1, 1973; $125,000 on November 1, 1975; $125,000 on November 1, 1976; and $837,500 on November 1, 1977. Calculation of 5 percent of each of these figures results in commissions of $12,500; $6,250; $6,250; and, $41,875 respectively. Interest of 7 percent per annum from the date each payment was due, to the date of judgment should have been based upon these figures.

Accordingly, that portion of the district court's judgment awarding pre-judgment interest should be reversed and the case remanded for an award consistent with this opinion.

The remaining portions of the district court's judgment should be affirmed.