## AMES et al. v. HEGELE et al.
### No. 2541.

Court of Civil Appeals of Texas. Beaumont. April 24, 1934.

Rehearing Denied May 2, 1934.

Morris & Bennett and Adams & White, all of Beaumont, for appellants.

R. E. Masterson and Jas. A. Harrison, both of Beaumont, for appellees.

COMBS, Justice.

Appellants are the widow and children of J. W. Ames, deceased. Mr. Ames was a real estate broker in the city of Beaumont, and represented the appellee, Wm. E. Hegele, in that capacity in the following transaction:

On July 1, 1930, Hegele, being the owner of 150 acres of land in the Hezekiah Williams, Jr., survey in Jefferson county, entered into an agreement to sell it to H. W. Nelson, who wanted to purchase it for the purpose of building and operating a golf course on it. The consideration for the purchase was to be $150 cash and eleven vendor's lien notes aggregating $75,000. Hegele executed a deed conveying the land to Nelson, retaining therein the vendor's lien, and Nelson executed the eleven notes and a deed of trust on the property to P. P. Butler, trustee, further securing the notes. All of these instruments were placed in the American National Bank of Beaumont under the following escrow agreement:

"Beaumont, Texas, July 1, 1930.
"The American National Bank,
"Beaumont, Texas.
"Dear Sir:

"We hand you herewith to be held in escrow, the following papers.

"1st: Deed from William E. Hegele to H. W. Nelson covering 150 acres of land in the Hezekiah Williams, Jr., Survey, in Jefferson County, Texas;

"2nd: Eleven Vendor's Lien promissory notes, executed by H. W. Nelson in part payment of said property;

"3rd: Deed of trust from H. W. Nelson to P. P. Butler, trustee, as additional security for the payment of said notes.

"In the event the said H. W. Nelson pays the first three of said notes as they accrue and become payable and has at such time completed and has in operation on said property an 18-hole golf course, or in the event he pays as they become due and payable the first five of said notes and at such time has

completed and in operation a 9-hole golf course on said property, this escrow agreement shall become terminated and thereupon you shall deliver to the said H. W. Nelson the aforesaid deed of conveyance and deliver to William E. Hegele the remaining Vendor's Lien notes and deed of trust lien as aforesaid.

"The decision as to whether there has been a compliance with the provisions of this escrow agreement as aforesaid shall be determined by your P. P. Butler, trust officer or his successor in office.

"In the event the said H. W. Nelson does not pay the notes as aforesaid and complete and have in operation the golf course as aforesaid, all of his rights to the purchase of said property shall cease and terminate and you shall at that time, upon request of the said William E. Hegele, return to him said deed of conveyance marked 'Voided', and return to the said H. W. Nelson the notes and deed of trust marked 'Voided', and any payments made by the said H. W. Nelson on said notes shall be forfeited as liquidated damages and considered as rental for the use of said property.

"Yours truly,
"[Signed] William E. Hegele, Seller.
"[Signed] H. W. Nelson, Purchaser.

"Received the above papers to be held in accordance with the above escrow agreement, this the 24th day of July, A. D. 1930.
"The American National Bank of Beaumont
"By [Signed] P. P. Butler,
"Vice-President."

The first five notes referred to in the above agreement aggregated $7,500 and were as to amounts and date of payment as follows: Note No. 1, $300, due January 1, 1931; note No. 2, $600, due January 1, 1932; note No. 3, $1,800, due January 1, 1933; note No. 4, $2,400, due January 1, 1934; note No. 5, $2,400, due January 1, 1935.

The deed, deed of trust, and notes, were all dated July 1, 1930, but were placed in escrow on July 24, 1930. At that time the following letter signed by Hegele and Ames and dated July 23, 1930, was also delivered to the bank:

"Beaumont, Texas, 7 23 1930
"American National Bank,
"Beaumont, Texas.
"Gentlemen:
"We herewith hand you a series of Notes numbered from one, to eleven inclusive, in escrow for H. W. Nelson and William E. Hegele, aggregating the sum of $75,000.00.

"You will please hold Notes numbered from one to five (Aggregating the sum of $7,500.00) inclusive for the Joint Account of J. W. Ames, and William E. Hegele, and as and when the notes are paid remit one half the proceeds thereof to William E. Hegele and one half to J. W. Ames.

"Yours very truly,
"[Signed] William E. Hegele
"[Signed] J. W. Ames."

By transfer dated July 23, 1930, and acknowledged on the following day, the same day the notes and deeds were placed in escrow in the bank, Hegele conveyed to Ames, for "$10.00 and other valuable considerations," a one-half interest in the first five notes. This assignment was acknowledged by Hegele and promptly recorded by Ames. The five notes themselves each bear the following indorsement on the back: "Pay one-half of this note to the order of J. W. Ames. [Signed] W. E. Hegele."

Hegele contends in his pleadings that the transfer of the one-half interest in the notes to Ames was for Ames' brokerage commission of 5 per cent., which was to be paid to him when, if, and as Nelson should exercise his option and pay the notes. Ames being deceased, the court did not permit Hegele to testify in regard to this transaction, but Mr. R. E. Masterson, the attorney who prepared all the papers, testified that such was the agreement between Hegele and Ames.

Nelson paid the first note, $300, to Mrs. Ames, her husband having died in the meantime, and she paid over one-half of the amount to Hegele, retaining the other one-half. When the second note came due, Nelson refused to pay it and notified Hegele and the bank that he would not go through with the deal. He turned the property back to Hegele, who requested the bank to cancel the notes, deed, and deed of trust, and deliver the notes to Nelson and the other documents to him. In the meantime Mrs. Ames, through her attorney, notified the bank that she and her children were claiming an interest in the notes, and the bank thereupon refused to cancel and surrender the papers, as requested by Hegele.

Appellee Hegele, as plaintiff, brought this suit against H. W. Nelson, P. P. Butler, trustee in the deed of trust, Mrs. Ames and her children, and against a number of other parties who had obtained and abstracted money judgments against Nelson, seeking to remove cloud from his title to the 150 acres of land and praying for cancellation of the recorded transfer of a one-half interest in the five vendor's lien notes to Ames, and as against Nel-

son he prayed that the escrow agreement be declared terminated and plaintiff's title to the land quieted as against all the defendants.

Mrs. Ames and her children answered and filed a cross-action against Hegele, Nelson, and Butler, wherein they asserted title to the one-half interest in the notes and the liens securing them, and pleaded that Nelson was liable to them for their interest in the notes as maker, and Hegele as indorser and guarantor of said notes. They pleaded also that by reason of being the owners of the interest in said notes, they had a lien on the land superior to Hegele's, and prayed for judgment for the amount of their interest in the notes and for foreclosure of the lien. On a trial to the court judgment was rendered for appellee Wm. E. Hegele and against appellants on their cross-action, denying them any recovery.

We think the judgment of the trial court was correct. From the facts set forth above it is perfectly apparent that the notes never became the obligation of H. W. Nelson. He did not exercise his option and the notes and deed were never delivered so as to bind any one. The escrow agreement gave Nelson the right to do just what he did do, decline to go through with the trade, surrender the property to Hegele, and treat the $300 which was paid in payment of the first note as liquidated damages and rental on the property.

Nor did Hegele become liable to Ames as indorser or guarantor of the note. As we have already said, the notes never became binding obligations upon any one. Moreover, the indorsement on the back of the five notes transferring a one-half interest to Ames could not have operated to bind Hegele as indorser because it was not a transfer of an entire instrument but of a one-half interest only. Article 5934, § 32, Vernon's Ann. Civ. St., reads as follows: "The indorsement must be an indorsement of the entire instrument. An indorsement which purports to transfer to the indorsee a part only of the amount payable * * * does not operate as a negotiation of the instrument." Section 30 of the same article reads: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; ·if payable to order it is negotiated by the indorsement of the holder completed by delivery." The record shows that the notes in question were never delivered to Ames, but were placed in escrow and are still held by the bank.

It is perfectly apparent, we think, that no cause of action ever arose in favor of Ames against Hegele by reason of the transfer of the one-half interest in the notes.

Moreover, the evidence is sufficient, we think, to show that the $3,750, being the one-half interest in the notes transferred to Ames by Hegele, was intended as commission for making the deal, provided it was consummated. The deal was never completed and Ames' commission was not earned.

Finding no error, the judgment of the trial court is in all things affirmed.