## ELMEN v. WINFIELD.
### No. 9524.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 27, 1935.

Rehearings Denied March 27, 1935.

Robert R. Mullen, Jr., of Alice, Seabury, Taylor & Wagner, of Brownsville, and J. O. Prentiss, of San Benito, for appellant.

Perkins & Floyd, of Alice, for appellee.

MURRAY, Justice.

Appellant, C. A. Elmen, a real estate broker, doing business under the trade-name of Elmen Land Company, instituted this suit against appellee, C. F. Winfield, seeking to recover the sum of $3,922 as a real estate brokerage commission alleged to be due to him for his services in securing Harry L. Murray as a purchaser for 1,000 acres of land located in Hidalgo county and belonging to appellee.

The facts are as follows: On November 1, 1930, appellee, Winfield, listed his 1,000 acres of land with appellant, Elmen, as a real estate broker, and in said listing contract agreed to pay appellant a commission of any sum in excess of $25 per acre for which appellant might be able to sell the land. On December 11, 1930, Elmen wrote Winfield, the owner of the land, telling him that he had located a man who might be interested in purchasing the land. He represented that this prospective purchaser was the leader of a syndicate that was being organized in Houston, Tex., among doctors, lawyers, school teachers, and clerks, for the purpose of developing unirrigated lands in the Rio Grande Valley, where Winfield's land was located, by planting grape vines thereon. This prospective purchaser was Harry L. Murray. Appellant further stated to appellee that this prospective purchaser did not wish to make any down payment on the land, but desired to use what money he had and the money he was getting in from the sale of stock in his syndicate, known as the Happy Income Home Owners' Association, for the purpose of developing and improving the land. Appellant suggested to appellee that, if he was interested in making this kind of a deal, he would introduce him to the prospective purchaser. In this communication of December 11th appellant inclosed a statement by the Happy Income Home Owners' Association which set out in detail their proposition for the purchase of appellee's land. Appellee stated that he understood this proposition was coming from Murray. In response to this proposition, appellee went to Houston and was there introduced by Elmen to the prospective purchaser, Murray, and at once began negotiations with Murray for the purchase of the land. These negotiations ultimately led to Murray's purchase of the land. The deal was closed by appellee executing a warranty deed, dated February 10, 1931, conveying the 1,000 acres of land to Murray, reciting a total consideration of $31,158, evidenced by six vendor's lien notes of even date with the deed, each being for the principal sum of $5,193, payable to the order of C. F. Winfield on the 1st day of April in the years 1935, 1936, 1937, 1938, 1939, and 1940, respectively, and bearing interest at the rate of 7 per cent. per annum. Murray executed a deed of trust also securing the payment of these six vendor's lien notes, in which deed of trust

344

it was provided that Murray should pay the taxes on the land for the year 1931 and all subsequent years.

After the execution of these instruments, appellee wrote appellant a letter acknowledging that appellant was entitled to a real estate commission in the sum of $3,922 to be paid on a pro rata basis, if, as, and when the deferred payments represented by the vendor's lien notes were made to appellee. This letter was as follows:

"The Long-Bell Lumber Company.
"Doucette, Texas, May 6, 1931.
"Mr. C. A. Elmen, West Building, Houston, Texas.
"My dear Sir: Having reference to your letter of April 28th, my understanding of the trade with Mr. Harry L. Murray, of the Hidalgo County land in the sale handled by you, is that your interest in the vendor's lien notes given by Mr. Murray in connection with the purchase of the land, is $3922.00, and my interest in this same series of notes is $27,236.-00; a total of $31,158.00, and that I am to pay to you as your commission on the sale, that amount of money in the ratio that your interest bears to my interest as shown in your interest of $3922.00 and my interest of $27,-236.00, with interest on the notes in the same ratio, if, as, and when any payment on principal or interest on the notes is made by Mr. Murray, his assigns or successors. No commission is to be paid to you on the sale of the land other than above stated, and this to be paid only, if, as, and when payment has been made to me on the vendors lien notes.

"Hope Mr. Murray is meeting with success in his sales and that he will soon be able to start actual development of the land.

"Thanking you and with kind regards to you and Mr. Murray, I am
"Yours very truly,
"C. F. Winfield."

During the time that appellee and Murray were negotiating with reference to the sale of this land, appellant wrote appellee a letter stating, in substance, that Murray certainly was getting lots of people interested in his syndicate and that appellant was doing lots of work assisting Mr. Murray in this organization, and that he believed that the proposition would take a rapid start as soon as the land deal was closed.

There was evidence introduced showing that in truth and in fact Harry L. Murray had no money whatever, was not able to put over his syndicate proposition, and was being supported by his son, Wesley L. Murray, at the very time he was carrying on negotiations for the purchase of this land. These facts were not known to Winfield at the time he sold the land to Murray, but were found out by him afterwards. Murray was unable to even pay the taxes upon the land and offered to deed the same back to appellee in consideration of the cancellation of the vendor's lien notes. Appellee, without the knowledge or consent of appellant, accepted this proposition and, on the 20th day of October, 1932, received a deed from Murray to the land, which recited a consideration of $10 and other valuable consideration, and the surrender, cancellation, and destruction of the six vendor's lien notes.

At the close of the testimony, both parties requested an instructed verdict at the hands of the court. The trial judge overruled appellant's motion for an instructed verdict, but granted appellee's motion and instructed the jury to return a verdict in favor of appellee. Accordingly, judgment was entered that appellant take nothing by reason of his suit, from which action and judgment of the court C. A. Elmen has prosecuted this appeal.

Appellant contends that the court erred in not granting his motion for an instructed verdict. He asserts that the undisputed evidence shows that the land was listed with him as a real estate broker; that he in good faith produced Harry L. Murray as a purchaser; that Dr. C. F. Winfield, owner of the land, began negotiations with Murray which ultimately resulted in the sale of the land to Murray, upon terms entirely satisfactory to him; that afterwards Winfield entered into a written contract in the form of a letter acknowledging that appellant was entitled to a commission of $3,922, to be paid pro rata out of the deferred payments represented by the six vendor's lien notes, if, as, and when said payments were collected by appellee; that afterwards appellee accepted a reconveyance of the land from Murray as full satisfaction of the six vendor's lien notes, and that thereby the notes were paid and appellant became entitled to his commission; that these facts being undisputed, the trial judge should have given him an instructed verdict for the amount of his real estate commission. We are inclined to agree with appellant's contention, with the exception that the undisputed evidence does not show that appellant acted in good faith. It is true that appellant did introduce appellee to Murray, who ultimately became the purchaser; that appellee consummated the sale of his land to Murray upon terms satisfactory to him and acknowledged appellant's interest in the vendor's lien notes;

and that appellee afterwards surrendered and canceled these notes without appellant's consent, in consideration of the reconveyance of the land to him, and that this amounted to a payment in full of the six vendor's lien notes.

■■ The rule is definitely settled in this state that where a real estate broker's commission is to be paid out of deferred payments evidenced by vendor's lien notes and the owner accepts a reconveyance of the land in full satisfaction and cancellation of the vendor's lien notes, the notes are thereby regarded as fully paid and the broker is then entitled to his commission. 9 C. J., p. 605, § 91, states in part: "Nor can a broker be deprived of his commission by an agreement of cancellation or release made by the principal and the customer, unless the agreement is entered into at the broker's request or with his consent." See, also, 9 C. J., p. 631, § 105; 7 Tex. Jur., p. 493, § 95; Crane v. Eddy, 191 Ill. 645, 61 N. E. 431, 85 Am. St. Rep. 284; Willson v. Crawford, 61 Tex. Civ. App. 580, 130 S. W. 227; Riley v. Palmer (Tex. Civ. App.) 237 S. W. 326; Adams v. Johnson (Tex. Com. App.) 298 S. W. 265; Cheek v. Nicholson (Tex. Civ. App.) 133 S. W. 707; Chambers y. Estes, 159 Ark. 250, 251 S. W. 701.

However, the evidence in this case raises the question of the bad faith and fraud of appellant upon appellee in inducing appellee to accept Murray as a purchaser of the land. We will not discuss the evidence upon this phase of the case, in view of a retrial of this cause, further than to state that in the light of the record the trial court could not have found as a matter of law that appellant acted in good faith in presenting Murray as a purchaser for this land.

■ The relation of a broker and his principal is of a confidential nature requiring the utmost good faith on the part of the broker and entitling the principal to the benefit of the broker's skill, knowledge, and advice. If the broker has no knowledge concerning the financial ability of the proposed purchaser, it is his duty to disclose this fact to his principal, so that the principal may investigate the proposed purchaser's financial standing. If the broker, by making representations which he knows to be false or which are recklessly made, not knowing whether they are true or false, induces his principal to enter into a contract to the principal's detriment, he thereby forfeits his right to a commission. Bute v. Williams (Tex. Civ. App.) 162 S. W. 989; 7

Tex. Jur., p. 433, §§ 45, 46; 4 R. C. L., p. 325, § 62; 62 A. L. R., page 1363; Branstetter v. Hook (Tex. Civ. App.) 251 S. W. 257.

■ The trial court under the evidence in this record could not properly have instructed a verdict either for appellant or appellee, but should have submitted to the jury the question of the alleged fraud of appellant in inducing appellee to accept Murray as a purchaser of his land.

The case does not seem to have been fully developed upon this issue. Accordingly, the judgment of the trial court will be reversed and this cause remanded for a new trial.