KAY FERRARA, Executrix of the Estate of FRANK N. FERRARA, Deceased, Appellant, *v.* HELEN R. FIRSCHING and ALFRED S. HOWES, Ancillary Executrix and Executor of the Estate of ROBERT A. FIRSCHING, Deceased, Respondents.

No. 7593

April 16, 1975                    533 P.2d 1351

[Rehearing denied May 20, 1975]

*Gabe Hoffenberg,* of Las Vegas, for Appellant.

*Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, for Respondents.

**OPINION**

By the Court, MOWBRAY, J.:

This is an appeal from an order of the district court granting summary judgment in favor of the respondents, Helen R. Firsching and Alfred S. Howes, Ancillary Executrix and Executor of the Estate of Robert A. Firsching, deceased (hereinafter referred to as Seller), and against the appellant, Kay Ferrara, Executrix of the Estate of Frank N. Ferrara, deceased (hereinafter referred to as Broker). Broker had commenced this action to recover a commission fee from Seller for the sale of real property to a third party, whom we shall refer to as Buyer.

1. In May 1969 Seller and Buyer signed escrow instructions wherein Seller agreed to sell to Buyer certain real property for the total sum of $492,000, with a down payment of $25,000 and the balance to be paid in installments.

Contemporaneously therewith, Seller and Broker entered

into a separate agreement for the payment of a broker's commission equal to 10% of the total sales price, or $49,200. The agreement provided that the commission was to be paid from the purchase money as it was received.[1]

Broker received 10% of the $25,000 down payment. This action was filed to collect the remainder of the commission. Seller has never received any additional payments on the balance of the purchase price.[2]

In November 1969, Buyer and Seller signed an addendum to the escrow instructions. Because Buyer did not perform pursuant to the original escrow agreement as amended by the addendum, Seller in 1971 brought an action against Buyer to have the escrow agreement and the addendum thereto rescinded. A judgment was entered in the district court in favor of Seller and against Buyer, canceling the escrow agreement between them.

2. Broker in the instant case predicates his argument for the remainder of his fee on the general rule that a broker earns his commission the moment that the seller and the buyer execute an enforceable purchase agreement and that a buyer's subsequent default does not affect the broker's right to receive the entire commission. Broker also urges that, in such cases, the seller may not avoid paying the broker his fee by canceling or amending the purchase agreement, for the reason that the commission was earned when the purchase agreement was executed.

While it is the general rule that a broker's commission is earned when a valid and binding contract for sale or purchase is entered into with a ready, willing, and able buyer, even though the buyer later fails or refuses to comply with the agreement, it is equally well established that the payment of a commission may be dependent on a condition beyond that implied by the ordinary broker's contract. For instance, as in this case, the commission may be dependent on the payment of the purchase price installments. In such an event, the refusal or failure

---

[1]The agreement stated in part:

"Said commission represents 10% of the total sales price and shall be paid to Broker as follows:

"Seller to pay 10% of all sums received from Buyers in this transaction not to exceed the sum of $49,200.00 directly to BROKER."

[2]Buyer did deposit in escrow an additional sum of $1,500 and a certain stock certificate. The escrow agent's check for the same remains uncashed, and the certificate remains in escrow. There is no factual dispute regarding this matter, as Seller has acknowledged that Broker is entitled to 10% of the check and the stock certificate.

of the buyer to perform is fatal to the recovery of the commission by the broker.[3] In this case, there was a "special contract" between Seller and Broker. Seller was bound to pay Broker "10% of all sums received from Buyers."

This court has frequently held that if the broker's agreement provides that his commission is to be paid from purchase money installments, the receipt of the installments is a condition precedent to recovery. Sala & Ruthe Realty v. Campbell, 89 Nev. 483, 515 P.2d 394 (1973); DiGregorio v. Marcus, 86 Nev. 674, 475 P.2d 97 (1970); Bell v. Krupp, 86 Nev. 247, 467 P.2d 1013 (1970); Craig v. Margrave, 84 Nev. 638, 446 P.2d 653 (1968); Fitch v. LaTourrette, 75 Nev. 484, 346 P.2d 704 (1959).

As this court held in Bell v. Krupp, *supra,* 86 Nev. at 250–251, 467 P.2d at 1016:

"The payment of a broker's commission, however, may be

---

[3]There is a growing body of case authority to the effect that, even in the case of the ordinary broker's agreement, the courts will imply a condition precedent to the payment of the commission, i.e., the performance by the buyer. These cases hold that it would be unconscionable and against public policy to enforce a promise to pay a broker's commission if, in fact, the buyer defaults. See the recent case of Gaynor v. Laverdure, 291 N.E.2d 617, 623 (Mass. 1973):

"We are aware of the fact that in several States in which the general rule of the liability of an owner of real estate to a broker procuring a purchaser ready, able and willing to purchase the real estate was substantially the same as that of Massachusetts, the law has been changed by recent judicial decisions. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 236 A.2d 843, decided in 1967, is perhaps the leading one of such decisions. There the court, after an extensive review of the prior law, stated at p. 551, 236 A.2d at p. 855, 'the following conclusions as to what the controlling rule should be in New Jersey: When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his, ... there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, in the absence of default by the seller, the broker's right to commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale.' " (Footnote omitted.)

predicated on a specified condition. As summarized in 10 S. Williston, Contracts, § 1287A at 978 (3d ed. W. Jaeger 1967):

" 'Whatever may be the customs and usages respecting the broker's right to a commission, when he presents a purchaser ready, willing and able to perform, the parties by their agreement may make this right dependent on an express condition such as actual sale. Or, other qualifications may be incorporated[,] such as "out of purchase money," "cash payment," "upon effecting a sale," "upon consummation of sale," "on the closing of title," "when title passed," "if deal went through," or, "on the date formal transfer is made." ' "

And again, in DiGregorio v. Marcus, *supra,* 86 Nev. at 677, 475 P.2d at 99, this court said:

"The right of a real estate broker to collect his fee is to be measured by the terms of his commission agreement. Fitch v. LaTourrette, . . . and Craig v. Margrave, . . . Such a contract may validly be predicated on specified conditions precedent. Craig v. Margrave, supra, and Bell v. Krupp, . . .

"When a commission agreement provides that the broker will only receive his fee from the purchaser's payments, the receipt of those payments is a condition precedent to the seller's obligation to pay the commission. Craig v. Margrave, supra, and Seminole Fruit & Land Co. v. Rosborough-Weiner, Inc., 43 So.2d 864 (Fla. 1950)."

■■■■■■■

The record below is undisputed that Buyer never made any of the purchase price installments. Since the condition precedent to the payment of the commission never occurred, Broker's fee was never earned.

■■■■■■■

3. A subsequent amendment or cancellation of a purchase agreement does not create a new obligation to a broker where none had previously existed.

■■■■■■■

Broker asserts that the amendment of the escrow instructions by the addendum (between Buyer and Seller) created an additional absolute (rather than a contingent) right to a commission. In the absence of fraud or bad faith (and none is alleged in this case), a subsequent modification of the purchase agreement because of the buyer's default does not in a "special contract" case make the seller liable for a broker's commission. The reason for the rule is that, since the broker has not yet become entitled to the commission, a good-faith modification

of the sales agreement by the seller does not create a new obligation to the broker. 12 Am.Jur.2d *Brokers* § 205, 208 (1964).

As the Wyoming court said in Dallas Dome Wyo. Oil Fields Co. v. Brooder, 97 P.2d 311, 320 (Wyo. 1939):

". . . It has been held that for a former owner to bid in the property at a foreclosure or other judicial sale is not equivalent to payment of the purchase price thereof by the vendee. . . . [citing cases] The same is true if the vendor merely cancels, or consents to the cancellation of a contract of sale, after, and because of the purchaser's default. It is stated in 12 C.J.S., Brokers, § 87, page 200, that 'after a contract between the principal and a customer produced by the broker has been concluded, its subsequent modification or cancellation does not defeat or affect the right of the broker to a commission, unless it is done at his request or with his consent.' That statement might be misleading, if not read in connection with other portions of the text. It applies only if the broker is already entitled to his commission at the time or previous to the time when a contract of sale is entered into betweeen the vendor and vendee. It does not apply when the commission is conditional, as, for instance, upon the payment of the purchase price. In such case cancellation by reason of the default of the purchaser is not equivalent to payment. . . . [Here, the court cited, among others, authorities from Virginia, Arkansas, California, Illinois, Indiana, Minnesota, and the Ninth Circuit.] . . ."

This court has not passed on the precise question of whether the seller can cancel or rescind the purchase agreement because of the buyer's default, without assuming a liability to the broker. However, an analogous issue arose in Craig v. Margrave, *supra,* wherein this court held that in the "special contract" situation the seller has no obligation, in order to protect the buyer's commission, to enforce the purchase agreement against the buyer; i.e., he may, in the absence of an allegation of bad faith, do nothing or, what is tantamount to rescinding, "refuse, fail, or decline . . . to foreclose under the trust deed," given to secure the purchase money installments. The court said, 446 P.2d at 655, 84 Nev. at 641–642:

"The lower court in this case held in accordance with the rule announced by the California and Florida courts when it ruled that the brokerage commission is not due 'until such

time as additional payments are received from garnishee's purchaser, or until such time as the land hereinvolved [sic] is sold to independent purchasers on foreclosure of the Deed of Trust hereinvolved [sic] and the sellers have received the balance of the purchase price in cash.'

"We think that ruling is correct and sustain it.

"The reasons supporting such rule are that the sellers have required, as here, that the commission comes from the purchase price and not their pocket. The sellers have bargained to receive installment payments in money for their property and not the property back, and at the foreclosure sale, if an independent purchaser bids in the property, sellers receive their money. If sellers bid it in they get the property back, not the installment payments of money for which they contracted." (Footnote omitted.)

Broker has failed to demonstrate the manner in which the addendum's modification of the escrow instructions affected or created his right to a commission. Broker's right to a commission, both before and after the addendum was executed, was subject to the condition that the purchase price installments be paid. That condition did not occur. There is nothing in the addendum or in the record before us to indicate that the condition was waived.

The trial court's ruling was correct, and the judgment below is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.