**Bridges BROWDER et al., Appellants,**

v.

**Larry E. HUGHES et al., Appellees.**

**No. 8339.**

Court of Civil Appeals of Texas, Beaumont.

March 27, 1980.

Rehearing Denied April 17, 1980.

John Hagerman, Margaret Johnson, Houston, for appellants.

James R. Cornelius, Jr., Robert Cain, Jr., Lufkin, for appellees.

KEITH, Justice.

Plaintiffs below appeal from an adverse judgment entered after a bench trial wherein they sought to recover commissions they claimed to be due upon a note arising from a real estate brokerage contract.

Ed and Maggie Hughes owned approximately 211 acres of land upon Lake Conroe in Montgomery County. Plaintiffs were real estate brokers who entered into an arrangement with the defendant Harry E. Hughes, son of Ed and Maggie, whereby plaintiffs would obtain a purchaser of the land. The price agreed upon was $5,000 per acre net to the sellers, the brokers to receive as their commission any money in excess of the agreed price of $5,000 per acre paid by the purchaser.

Through intermediaries, plaintiffs eventually procured a purchaser for the land, S/C Management 102, Ltd.[1] The purchase was consummated in a carefully fashioned speculative scheme wherein the purchasers assumed little risk of financial loss. The Sellers' Statement furnished to the defendants at the time of the execution of the closing papers revealed:

(1) The sales price was $1,249,798.18—precisely $5,900 per acre.

(2) Browder's commission, shared by Norman Eaton and Larry Hughes, was shown to be $105,915.10, exactly $500 per acre.

(3) Shindler/Cummins, Inc.'s commission was listed as $84,732.08, or $400 per acre.[2]

(4) Only the sum of $59,998.18 was paid in cash, a sum equal to less than five per cent of the sales price.

(5) The remainder of the purchase price was represented by a promissory note in the amount of $1,189,800 in the form of a vendor's lien note secured by a deed of trust upon the property, the note bearing seven per cent interest and payable as explained in the margin.[3]

This note contained an unusual provision relieving the makers of any personal liability on the note in the event of default. This provision read:

"Notwithstanding any provision herein to the contrary, it is expressly understood that neither the Maker of this Note (nor any beneficial owner of the land conveyed by Deed of even date herewith from the Payees of this Note, as grantors, to the Maker of this Note, as grantee), shall be personally liable for the payment of any sums due on or with respect to this Note or any instrument securing the payment of this Note, and in the event of any default in the payment of this Note

---

1. The purchaser was a limited partnership or syndicate composed of a corporate general partner and a number of individual limited partners. The general partner was an affiliate of Shindler/Cummins, Inc., one of the plaintiffs in the action we now review. It, too, sued upon a note similar to that of plaintiffs, but did not appeal from the judgment which denied it a recovery.

2. No explanation was offered by Shindler/Cummins, Inc., as plaintiff, of its sharing in the real estate broker's commission when its affiliate was shown to be the purchaser.

3. Interest was prepaid at the time of the execution of the note. Additional interest payments were payable annually thereafter on July 11, 1973, through and including July 11, 1976. On July 11, 1977, the first payment on principal was payable and payments on principal together with accrued interest were due annually thereafter.

or under any instrument securing the payment hereof, the Payees shall look solely to the proceeds of a judicial or a non-judicial foreclosure upon the property described in the aforesaid Deed and Deed of Trust (save and except any property theretofore partially released), and shall never have the right to seek or to take any deficiency or other money judgment against the Maker of this Note or any such beneficial owner of said land."

Again, by referring to the Sellers' Statement, we learn that the brokers received two-thirds of the down payment, leaving the sellers only $9,129.94 out of their million dollar sale. They did receive and keep the prepaid interest.

The sellers then executed and delivered their promissory notes to the brokers: (1) Browder (for his benefit and for the benefit of Eaton and Larry Hughes) in the amount of $85,920; (2) Shindler/Cummins, Inc., for $64,728. Each note required the makers to pay interest only and a portion of the principal only in accordance with the payment schedule in the vendors' lien note of the purchaser. The notes to the brokers provided:

"Notwithstanding anything to the contrary herein, the holder of this note shall be entitled to its pro rata share of any payment (including prepayments) made on that Promissory Note of even date in the principal sum of $1,189,800.00, executed by S/C Management 102, Ltd. payable to the order of Edward Hughes and Maggie Hughes *if, as, and when, said payments are received, but not otherwise. . . .*" (emphasis supplied)

Interest on the purchaser's note was paid annually in July of 1973, 1974, and 1975 and the brokers, including appellants, got their share. The maker defaulted in 1976 and no further payments were ever made. According to an officer of the purchaser group, the decision to default was made because the "group felt that it was in their own interest to default and not pay anymore, because the value of the land had not been enhanced."

Both sellers were dead by the time of the default and Larry Hughes, as executor of their estates, turned the note over to his attorney for collection, but to no avail. Finally, the trustee posted notices of sale and no one appeared at the sale to bid on the property. The trustee then sold the property to himself and his two sons (beneficiaries of the estates) by bidding the face of the purchase money note, and a deed was executed whereby title was regained by the estates. No money was received in the transaction.

Browder, Eaton, and Shindler/Cummins, Inc., brought suit upon the two promissory notes seeking to recover the balance due thereon alleging that the bid at the trustee's sale of the face of the note amounted to payment. Plaintiffs sought recovery of the amounts due on the notes, attorney's fees, interest, costs, etc. In a non-jury trial at which the facts were developed fully, the trial court denied plaintiffs any relief and Browder and Eaton have perfected their appeal.

Plaintiffs claim that the bid of the face of the note amounted to "payment" of the note which, in turn, triggered their right to recover on the brokerage notes. This contention is urged notwithstanding the language in the notes that the brokers were entitled to only a pro rata share of "any payment . . . made . . . if, as, and when, said payments are received, but not otherwise."

Plaintiffs place their primary reliance upon two cases: *Elmen v. Winfield*, 80 S.W.2d 343 (Tex.Civ.App.—San Antonio 1935, writ dism'd), and *Adams v. Johnson*, 298 S.W. 265 (Tex.Comm'n App.1927, jdgmt. adopted).

The principal question presented is whether or not the foreclosure of the deed of trust, under the circumstances set out above, constituted *payment* of the vendor's lien note. We recognize the continued vitality of the two cases cited above but do not share plaintiffs' belief that they are controlling in this case.

In each case cited, the purchase money notes were regular on their face, including personal liability upon the part of the mak-

ers, and the sellers of the land had the right to insist upon payment in accordance with the face, tenor, and effect of the obligations. Instead, realizing the futility of litigation against an insolvent maker, the payee agreed to a cancellation. We agree, under Texas law, the payee should have procured the consent of the broker before agreeing to the cancellation.

We have no simple case as was examined in *Elmen*, supra. Our ultra-sophisticated transaction was structured so that the members of the syndicate could, by the payment of interest, take advantage of the potential rise in value of the land; if it became more valuable, they could pay for it; if it did not rise in value, they could walk off and forfeit only their small down payment (in which the parent corporation of the general partner shared as a broker) and as for their interest payments, undoubtedly, they were charged against current income on the tax returns of the limited partners. Plaintiffs were parties to the entire transaction and agreed to accept as payment of their notes only a pro rata share of "any payment . . . made . . . if, as, and when said payments are *received*, but not otherwise." (emphasis supplied)

No one contends that the syndicate ever paid the sellers for the land or that the sellers did not remit to the plaintiffs their fair share of what they actually *received* from the purchasers. Instead, it is clear that the brokers' commissions were dependent upon the contingency of payment by the purchaser. In *Ferrara v. Firsching*, 91 Nev. 254, 533 P.2d 1351, 1353 (1975), the Court cited many cases holding that contracts similar to that in the case at bar constituted "special contracts" and that payment by the purchaser to the seller was a condition precedent to recovery by the broker. The Nevada Court also cited *10 S. Williston, Contracts, § 1287A, at 978 (3d ed. W. Jaeger 1967)*, in support of the rule so enunciated. See also, Annotation, "Broker —Right to Commission", *74 A.L.R.2d 437, 475 (1960)*. We are of the opinion that the rationale of *Ferrara* is applicable to the facts at the bar and it is adopted in this case.

In *Ames v. Hegele*, 70 S.W.2d 1018, 1020 (Tex.Civ.App.—Beaumont 1934, writ ref'd), this Court faced a similar case wherein the broker attempted to collect his commission from the seller after the purchaser had declined to make payments upon notes. This Court noted that the agreement "gave Nelson [the purchaser] the right to do just what he did do, decline to go through with the trade . . . ." In *Ames*, the broker's note provided for payment "as and when the [purchaser's] notes are paid . . . ." (at 1019) The purchaser not having paid his notes, the seller was not required to pay the broker's note.

We are unwilling to convert the sellers' contingent obligation into one unconditionally payable because of their bid at the foreclosure sale. They had no right to pursue a deficiency judgment against the purchasers and the brokers lost nothing when the deed of trust was foreclosed. If the sellers had bid $10 at the foreclosure sale, this case would not be before us. The fact that a bid of the amount of the note was made cannot be now used to create liability where none existed.

The first point of error is overruled; and, because of this action, we do not reach the second point of error. The judgment of the trial court is AFFIRMED.