**686**

**Nazih ZUHDI, Allen E. Greer, John Carey, and Marion Lensgraf, Appellee,**

v.

**COHEN REALTY, INC., Appellant.**

**No. 75606.**

Court of Appeals of Oklahoma, Division No. 2.

July 7, 1992.

ey and Marion Lensgraf, through the aid of CRI, sold real estate located in Oklahoma County to Henderson Holding Company, Inc. ("HHC"). HHC executed and delivered to plaintiffs a Note ("Purchasers Note") and a Real Estate Mortgage, which Mortgage was given to secure the HHC Note.

Plaintiffs paid a commission to CRI in accordance with a written agreement, which, in relevant part, states:

"Cohen Realty, Inc., as realtor on such sale, will receive a six percent (6%) commission on such sale as and when the sales proceeds are paid by Henderson Properties, Inc. to the Sellers. The Sellers will execute a Nonnegotiable Note to Cohen Realty, Inc. at the time of closing, which will represent the unpaid commission on such sale."

The Nonnegotiable Note was indeed executed and delivered to CRI, and, in part, reads:

"Payment of this Note is contingent upon the undersigned receiving the cash due under the terms of Purchaser's Note. The undersigned promise to pay six percent (6%) of any cash principal payment and six percent (6%) of any interest payment paid by the Purchaser on Purchaser's Note to the Payee within five (5) days after the same has been received by the undersigned."

HHC subsequently defaulted on the Purchasers Note in 1988. Up to that time, CRI was paid six percent (6%) commission on all sums received from HHC as payment on the Purchasers Note.

Plaintiffs sought the unpaid balance due of the Purchasers Note and foreclosure of the Mortgage. In addition, plaintiffs also sought a declaratory judgment against CRI stating CRI is not entitled to any further commission payments.

The trial court ruled that if the property is sold at Sheriff's Sale to someone other than the plaintiffs, CRI is entitled to six percent (6%) of the sales price. Moreover, the court ruled that if a deficiency judgment is obtained, CRI is entitled to six percent (6%) of anything collected. This

W. Samuel Dykeman, David B. Dykeman, Dykeman, Williamson & Williamson, Inc., Oklahoma City, for appellee.

Michael E. Krasnow, Krasnow & Williams, Oklahoma City, for appellant.

RAPP, Presiding Judge.

Trial court defendant, Cohen Realty, Inc. ("CRI"), appeals an order denying it a commission.

On August 11, 1983, the plaintiffs/sellers, Nazih Zuhdi, Allen E. Greer, John Car-

portion of the court's ruling is not appealed. The trial court further ruled, however, that if the plaintiffs bid the property back, or if the plaintiff takes the property back by a deed in lieu, there is no commission due to CRI. It is this portion of the ruling that is here being appealed.

While this is a matter of first impression in Oklahoma, there are two distinct views on the proper course of action. One view holds, where a broker is to receive a commission out of the purchase money as it is paid to the seller, in the event of default by the purchaser and a foreclosure sale where the seller purchases or bids in the property, the broker is entitled to his/her commission. The rationale is that the result is the same as if someone else had bid the property—the note(s) is/are satisfied in full and therefore the broker is entitled to his/her commission. *Elmen v. Winfield*, 80 S.W.2d 343 (Tex.App.1935); *Crane v. Eddy*, 191 Ill. 645, 61 N.E. 431 (1901). The latter, more modern, view denies the broker his/her commission in this scenario. The rationale is that the broker made the payment from the purchaser a precondition to his receipt of the commission, and the parties intended the commission monies to come from the purchaser's pocket, not the seller's. *Fletcher Realty, Inc. v. Hayslope Properties*, 712 S.W.2d 478 (Tenn.App. 1986); *Ferrara v. Firsching*, 91 Nev. 254, 533 P.2d 1351 (1975).

We are here inclined to follow the latter, more modern, view and affirm summary judgment for the trial court plaintiffs. The contract between the trial court plaintiffs and CRI is governed by Oklahoma law. According to Oklahoma law, a contract must be interpreted to give effect to the mutual intent of the parties. 15 O.S. 152 (1991). Moreover, the language of the contract governs its interpretation. 15 O.S. 154 (1991). The language used in the Non-negotiable Note evidences this intention:

> "Payment of this Note is contingent upon the undersigned receiving the cash due under the terms of Purchaser's Note."

Moreover, the agreement made between plaintiffs and CRI regarding CRI's commission again specifically spelled out this intent:

> "Cohen Realty, Inc. . . . will receive a six percent (6%) commission on such sale as and when the sales proceeds are paid by Henderson Properties, Inc. to the Sellers."

Thus, it is clear that both plaintiffs and CRI intended for CRI's commission to come from, and be contingent upon, payments made by the purchaser.

The language of both the Note and the agreement is clear. Similar to *Ferrara*, the payment by HHC to plaintiffs was a condition precedent to CRI receiving its commission, and the commission monies were to be paid from those received from HHC and not from the plaintiffs' pockets.

This matter is distinguishable from *Crane* and another older case following the earlier line of reasoning, that of *Althouse v. Watson*, 143 Md. 650, 123 A. 47 (1923). In both cases, the contract in question between the seller and the broker used the words "due" or "is due and owing" in reference to the broker's commission. The contract involved in the instant case used no such obligatory words. The plaintiffs and CRI contracted for CRI's commission to come from "cash due under the terms of the Purchasers Note." Receiving the property back does not constitute "cash." *Ferrara*, 533 P.2d at 1354 (quoting from *Dallas Dome Wyo. Oil Fields Co. v. Brooder*, 55 Wyo. 109, 97 P.2d 311 (1939)). The parties made their agreement dependent on this express condition, and that intention should be carried out.

BRIGHTMIRE, J., concurs.

BOUDREAU, J., dissents.