[Civ. No. 4728. Second Appellate District, Division One.—May 17, 1927.]

N. C. DOWN, Respondent, v. M. DeGROOT et al., Appellants.

[1] BROKER'S COMMISSIONS—PROCURING OF PURCHASER—PREVENTION OF SALE BY SELLERS—EVIDENCE.—In an action by a real estate broker to recover a commission earned by him on a sale of real property for defendants, such broker was entitled to a commission, where the evidence showed that he found a person who was ready, able, and willing to buy the property belonging to defendants on terms and conditions satisfactory to each of the proposed contracting parties to the agreement of sale, and that the sale was not consummated because the defendants, after having given the prospective buyer a receipt reciting that "This deposit to be returned . . . if satisfactory arrangements are not effected," changed

---

1. Effect on broker's right to commission of default of principal in entering into or carrying out of contract with purchaser, note, 43 L. R. A. 593. See, also, 4 Cal. Jur. 597; 4 R. C. L. 304, 310.

their minds, which act was not the result of the failure of the parties to effect "satisfactory arrangements," as recited in said receipt.

[2] ID.— WHEN BROKER ENTITLED TO COMMISSION—GENERAL RULE.— The rule with reference to the liability of one who in writing agrees to pay a broker a commission for the sale of real property is almost universally understood to be that when the broker has produced a purchaser ready, able, and willing to buy on the terms proposed by the seller, the broker has performed his part of the contract and is entitled to the payment to him of the commission as agreed upon by the parties.

[3] ID.—SALE OF OTHER PROPERTY TO PROSPECTIVE BUYER—EFFECT OF —CONTRACTS—EVIDENCE.—In such action, the trial court did not commit error in sustaining an objection to a question propounded to plaintiff as to whether on the subsequent sale of other property made to the intending purchaser of the property belonging to defendants plaintiff received a commission, where plaintiff's contract with defendants was one for the payment of a certain sum of money in compensation for a specified service, on the performance of which the right to payment therefor followed, unaffected by any future service which might be rendered to other persons.

---

(1) 9 **C. J.**, p. 624, n. 68, p. 626, n. 77; 13 **C. J.**, p. 647, n. 24. (2) 9 **C. J.**, p. 596, n. 33.   (3) 9 **C. J.**, p. 590, n. 14.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul Burks, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. E. Light for Appellants.

A. C. Galloway for Respondent.

HOUSER, J.—This is an appeal from a judgment in favor of plaintiff in an action brought for a commission earned by him on a sale of real property for the defendants.

The facts appear to be that the property which was the subject of the sale was listed for sale with plaintiff by the defendants at a price of $8,400, payable $2,500 cash, with

---

2. When broker earns his commission, notes, 28 **Am. St. Rep.** 546; 139 **Am. St. Rep.** 225. See, also, 4 **Cal. Jur.** 582, 596; 4 **R. C. L.** 307.

the balance to be paid at the rate of $75 per month, including interest—the buyer to assume a mortgage of $1,000 on the property; that thereafter plaintiff produced a person who was ready, able, and willing to purchase the property in question and who thereupon paid to defendants the sum of $25 for which defendants issued to the purchaser a receipt in the following form, to wit:

"Received of James Oswald through the N. C. Down Company, $25 deposit on the property located at 1648 West 55th street, Los Angeles, price to be $8400. Terms to be arranged on or before Monday, October 8. This deal subject to usual brokers' five per cent commission. This deposit to be returned to James Oswald if satisfactory arrangements are not effected of $2100 down, $75 TD."

Thereafter, and on the same day on which the said receipt was delivered to the purchaser, the defendants stated to the intending purchaser and the plaintiff that they "had changed their minds," and that they did not wish to, and would not, sell the property, and thereupon returned to the intending purchaser the $25 which theretofore had been paid as a deposit in connection with the transaction. However, on the same "night, late," the defendants "changed their minds again" and delivered to the intending purchaser a letter, the body of which was as follows:

"I am sorry that we have disappointed you in regards this deal and hope that you will forgive us for doing this. There has been some misunderstanding in regards our privilege of changing our minds. So now we have decided to let you people have the place, as we have it understood between each other."

By that time, however, the proposed buyer of the property was "getting disgusted" and "wanted no more to do with Mr. DeGroot"; and thereafter, although insistently urged to do so by plaintiff, declined and refused to proceed with the purchase of the property. On the day following, acting as agent for an owner of other property, plaintiff sold such property to the man who had expected to buy the property in question from defendants. Thereafter the instant action was brought by plaintiff against defendants, which, as hereinbefore stated, resulted in a judgment in favor of plaintiff, and from which judgment defendants have appealed to this court.

[1]  The evidence shows that plaintiff found a person who was ready, able, and willing to buy the property belonging to defendants on terms and conditions satisfactory to each of the proposed contracting parties to the agreement of sale.  Although the deposit of $25 given by the prospective buyer to the defendants was returned to such buyer, that act was not the result of the failure of the parties to effect "satisfactory arrangements," as recited in the receipt signed by defendant DeGroot, but apparently was done solely because the defendants "changed their minds" and refused to sell the property.  It, therefore, was by no means the fault of the intending purchaser that the sale was not consummated, but rather because the defendants prevented the sale from taking place.  While originally the consummation of the sale may have depended upon "satisfactory arrangements" being effected between the proposed purchaser and the defendants, if the defendants prevented any such arrangements from being made, they are in no position to complain on that account.  For aught that appears the intending purchaser agreed, or would have consented, to each and every suggestion or demand which might have been made by the defendants.  As is laid down in the case of *Carl* v. *Eade*, 81 Cal. App. 356 [253 Pac. 750], where the authorities are cited: "One who voluntarily prevents the performance of some act upon which an obligation depends will be precluded from setting up such non-performance as a defense."

[2]  The rule with reference to the liability of one who in writing agrees to pay a broker a commission for the sale of real property is almost universally understood to be that when the broker has produced a purchaser ready, able, and willing to buy on the terms proposed by the seller, the broker has performed his part of the contract and is entitled to the payment to him of the commission as agreed upon by the parties.

The case of *Merriman* v. *Wickersham*, 141 Cal. 567 [75 Pac. 180], is illustrative of both the facts and the law in the instant case.  We quote therefrom:

"It is contended by appellant, however, that the contract between Wickersham and the Burnham & Marsh Company, contemplated an actual and completed sale, and that, as Wickersham repudiated the contract before its full execu-

tion by the transfer of title, he was not bound to pay the commission contemplated. But the answer to this is two-fold. First, the contract which Wickersham approved was a sale of his property, and thus the literal terms of his contract with the Burnham & Marsh Company had been complied with. It was a conditional sale, to be sure, but none the less it was a sale. Second, the law as to this contract is no different from the law as to brokers' contracts generally; that is to say, where the contract fixes the broker's right to remuneration upon his sale, if he shall produce a purchaser able and willing to buy, he has performed his part of the contract, and the owner's liability for his compensation or commission is complete, and cannot be avoided by any arbitrary or wanton refusal to consummate the sale. (*Crane* v. *McCormick,* 92 Cal. 176 [28 Pac. 222] ; *Smith* v. *Schiele,* 93 Cal. 144 [28 Pac. 857] ; *Gregory* v. *Bonney,* 135 Cal. 589 [67 Pac. 1038].)"

[3] Appellants urge the point that the trial court erred to defendants' prejudice in sustaining an objection to a question propounded to plaintiff as to whether on the subsequent sale of other property made to the intending purchaser of the property belonging to defendants, plaintiff received a commission. The effect of the point raised by appellant is that, even assuming that plaintiff had earned a commission for the sale of defendants' property, yet if subsequently thereto plaintiff sold a different piece of property to the same person who had anticipated purchasing property from defendants and received a commission therefor, plaintiff would not be entitled to be twice paid for his services and consequently that there should be no recovery as against defendants.

In that regard the evidence shows that, while the purchaser was in the market for one piece of property only, nevertheless, according to the testimony of the proposed purchaser, "we was able to buy two places if we wanted to." Moreover, from what heretofore has been said, it is clear that before the second sale had been made by plaintiff he had earned his commission for the sale of defendants' property. That labor had been fully completed. The work of making a new sale to the same customer probably entailed as much, if not greater, effort on the part of the agent than did the first sale, and likewise may have re-

quired greater efficiency in salesmanship. The actual time and labor required in making the first sale had been expended. Whatever its effect was of the past. Unless recovery for a commission earned could be had by plaintiff from defendants, the incident represented a total loss of energy and time expended. The rights, duties, and obligations arising therefrom were fully accrued. No future acts by the parties or by either of them as affecting either his or their new contractual rights could be influenced or affected by reason of what had gone before. It was not like a contract to deliver goods in which, on the failure of the person obligated to supply the goods for delivery, the carrier delivers other goods for other persons within the same time that it would have taken to deliver the goods contracted with the first person to be delivered. (*Utter* v. *Chapman,* 38 Cal. 659.) Neither did it resemble an agreement to render personal services for a stipulated period at a fixed price. It was a contract for the payment of a certain sum of money in compensation for a specified service; on the performance of which the right to payment therefor followed, unaffected by any future service which might be rendered to other persons.

It is, therefore, concluded that no error was committed by the trial court in sustaining the objection to the question as to whether plaintiff received a commission on sale of property subsequent to the failure of defendants to proceed with the consummation of the sale theretofore effected by plaintiff.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1927.