267 P.2d 237

**CURTIS et al. v. MORTENSEN et ux.**

No. 8051.

Supreme Court of Utah.

March 1, 1954.

Faux, Rich & Kirton, Salt Lake City, for appellants.

H. Arnold Rich, Salt Lake City, Robert Rees Dansie, Murray, for respondents.

WADE, Justice.

Appeal by real estate brokers, members of the Multiple Listing Bureau and the Salt Lake Real Estate Board, from a judgment denying them commission for which they brought this action against Reed Mortensen and Ann Mortensen, his wife, respondents herein.

Most of the facts are not in dispute. Appellants Taylor-Gardner had clients who, on January 14, 1952, had deposited with them $5,000, with instructions to find them a motel property in Utah. Appellant Main Realty Company had at one time had a listing of respondents' motel property which was located in Murray, Utah. A salesman of Taylor-Gardner contacted Mr. B. L. Curtis, one of the partners of Main Realty Company asking him if he knew of any motel properties for sale. Mr. Curtis recalled that they had once had a listing of the Mortensen property and said he would find out if they wanted to list it again. He thereupon went to see the Mortensens and secured a six months listing agreement from Mr. Mortensen on January 23, 1952, which provided that if a buyer was found who was ready, willing and able to buy the property a commission established by the Salt Lake Real Estate Board would be paid. The Taylor-Gardner salesman then telephoned the prospective buyers in New York who authorized him to sign an earnest money agreement for them upon terms satisfactory to the sellers and subject to the buyers' approval on or before February 4, 1952, upon examination of abstract and operating statement to be furnished by the sellers. The earnest money agreement, which also contained a provision to pay commission was signed by the sellers and by the salesman as agent for the buyers on January 28, 1952. After this agreement was signed the sellers were told that it would be nice if their operating statement showed the gross income of the motel to be $20,000 per annum. The motel property did not gross any such large income. Respondent Ann Mortensen had never favored selling the property, so after the above comment and other remarks had been made to the effect that when the buyers came to inspect the property there should be a number of cars present and some maids working to make the place appear very busy, Mr. Mortensen consulted his attorney the next day. His attorney, upon being apprised of the fact that the salesman's au-

thority to sign the earnest money agreement for the buyers was conditioned upon their approval by February 4, advised his client to rescind the agreement, which was done. Mr. Mortensen also attempted to rescind his listing agreement.

The buyers upon receipt of telegrams from the Mortensens telling them that the agreement to sell was being rescinded came to Salt Lake and sought specific performance of this agreement. The court refused to grant them specific performance because no consideration had actually been paid and their agent had only authority to sign the earnest money agreement upon condition that it be subsequently approved by the buyers upon furnishing of an operating statement. This approval not having been given before the rescission no binding agreement had been entered into between the parties which would, the court concluded, entitle them to specific performance. No appeal was taken from this judgment and it became final.

The court, in the instant case, as trier of the facts, found that no consideration had actually been paid at the time the earnest money agreement was signed and that the agreement had been rescinded before the purported purchasers received an operating statement or could approve the transaction and that the purchasers thereafter made no other offer other than the conditional offer subject to their approval of an operating statement and subject to their approval by February 4, 1952. It further found that appellants did not procure a valid, binding and enforceable offer for acceptance by respondents, which if accepted would have resulted in a binding agreement. From these findings the court concluded that appellants were not entitled to a commission under the terms of the listing agreement.

The question presented is whether appellants had found purchasers ready, willing and able to perform under the terms of the listing agreement. If so, it is immaterial whether they could recover under the earnest money agreement. It was stipulated that the would be purchasers were financially able to fulfill respondents' terms.

It is respondents' contention that appellants had failed to earn their commission under the listing or earnest money agreements because they had failed to present to them an offer or agreement that was binding on ready, able and willing purchasers. They cite the following Utah cases for authority that a broker is entitled to his commission when he has procured a written binding offer or agreement signed by a ready, willing and able purchaser: Garff Realty Co. v. Better Buildings, Inc., Utah, 234 P.2d 842, Reich v. Christopulos, Utah, 256 P.2d 238, Sproul v. Parks, 116 Utah 368, 210 P.2d 436, Ogden Savings Bank & Trust Co. v. Blakely, 66 Utah 229, 241 P. 221 and Lewis v. Dahl, 108 Utah 468, 161 P.2d 362, 160 A.L.R. 1040. In none of these cases did a seller refuse to sell to a buyer procured by a broker during the listing period who was

ready, willing and able to purchase the property on the sellers' terms. In the instant case the would be purchasers filed suit for specific performance within the six months listing period. They did not win their suit but they just as effectively offered to buy the property by taking such action as they could have offered by signing a binding agreement on the sellers' terms, instead of having originally made the signing by their agent subject to their approval. It is obvious that the reason this court has stated in the above cited cases that a binding agreement or offer of the buyer is necessary if a broker is to be entitled to his commission is to protect the seller from being obligated to pay a commission where the proposed buyer either cannot or will not perform and the seller is left without a remedy which can be enforced against the buyer. This was not the case here. The proposed purchasers were anxious to buy the property even after respondents' rescission of the earnest money agreement. Their suit for specific performance is ample proof of that fact. There can be no question about their willingness to buy and it was stipulated that they had the financial ability to consummate the sale. The sale was never consummated because respondents changed their minds and refused to sell and not because the buyers refused to make a binding agreement. Under such circumstances appellants have fulfilled their part of the listing agreement by having produced purchasers who were ready, willing and able to buy the listed property and are entitled to their commission. Such were the terms of the listing agreement made by the parties. There was no requirement that a binding contract be entered into and for us to add that requirement would be to make a new contract for them. This we may not do. As stated in 8 Am.Jur. Sec. 184, page 1097:

"Once the broker has procured a person who is able, ready and willing to purchase on the terms offered by the owner, he is entitled to commissions, even though the failure to complete the contract is due to the default or refusal of the employer."

This court in Little and Little v. Fleishman, 35 Utah 566, on page 568, 101 P. 984, on page 984, 24 L.R.A.,N.S., 1182, indicated it was in accord with the above statement, even though it was unnecessary to a decision of that case since a binding offer had been obtained by the owner, by saying:

"* * * The substantial features of the agreement between plaintiffs and the defendant are that the plaintiffs were employed to effect, not consummate, a sale, and were entitled to a commission in the event of a sale at any price agreed upon. When the plaintiff obtained and produced a purchaser who was able, ready, and willing to purchase for the price, and on the terms proposed they did all that was required of them, and the owner could not, under the terms of his con-

tract with them, arbitrarily refuse to sell and decline to enter into negotiations of a sale with the proposed purchaser without becoming liable to plaintiffs for their commission. * * *"

See also Hoyt v. Wasatch Homes, 1 Utah 2d 9, 261 P.2d 927, Down v. DeGroot, 83 Cal.App. 155, 256 P. 438 and Peeler v. Bean, Tex.Civ.App., 38 S.W.2d 395.

Reversed with instructions to proceed in accordance with this opinion. Costs to appellants.

McDONOUGH, CROCKETT, and HENRIOD, JJ., concur.

WOLFE, C. J., does not participate.