**W. W. BILLINGTON d/b/a Billington and Company,
Plaintiff-Appellee-Appellant,**

v.

**P. K. CROWDER and wife, Paula Davis Crowder and Bessie T. Davis,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Original Opinion Feb. 25, 1977.

Certiorari Denied May 31, 1977.

Abridged Opinion June 29, 1977.

McWilliams, Berry & Ogelsby, Franklin, for plaintiff-appellee-appellant.

Harwell, Bottoms & Plant, Lawrenceburg, for defendants-appellants.

## OPINION

TODD, Judge.

The Chancellor awarded plaintiff a judgment against all defendants for $20,000.00 damages for alleged breach of real estate brokerage contract. Defendants have appealed from the award of judgment to the plaintiff, and plaintiff has appealed from the amount awarded.

The complaint alleges that plaintiff had an oral, nonexclusive listing of defendant's farm; that plaintiff produced a buyer ready, willing and able to buy on defendant's terms; that defendants refused to sell to said buyer and thereby deprived plaintiff of the *commission which he would have been able to collect from the buyer* if plaintiffs had sold to him. Plaintiff does not claim that defendants agreed to pay him a fee, but admits that, at all times, it was understood that all expenses, including broker's commission, were to be paid by the purchaser in addition to the announced sale price.

The answer denies any "listing agreement" or other contract with plaintiff, but admits that plaintiff and other real estate brokers were informed that the subject farm could be purchased on specific terms. The answer denies that plaintiff ever presented an offer on the terms stated by defendants.

The memorandum opinion of the Chancellor contains the following pertinent findings of fact:

"In the fall of 1972 plaintiff W. W. Billington had information that they (defendants) were interested in selling the farm. Plaintiff called Mr. P. K. Crowder and was informed by him that the farm was listed for sale and was available to any agent. . . .

"Plaintiff contacted a Mr. Stewart Campbell of Williamson County. Mr. Campbell made a counter proposal which was not accepted. Mr. Campbell then told plaintiff to meet whatever conditions that were necessary. The plaintiff then called Mr. Crowder and Mr. Crowder informed him that they had decided not to sell.

"On or about the 18th of April 1974, plaintiff again called Mr. P. K. Crowder and told him that he had heard that the property was back on the market. Mr. Crowder informed him that it was. The plaintiff then traveled to the Crowder's home in Lawrence County where Mr. Crowder gave him the terms of the sale. They were as follows: The 392.42 acres was for sale for $400,000.00 net, meaning that they would not pay any commission and further they would not furnish title insurance. They were to be paid twenty nine per cent down at closing with a balance in ten years at eight per cent interest. The plaintiff was also informed that the lease on the farm did not expire until January 1, 1975.

"A new contract was drawn which agreed to all the conditions imposed by the sellers. This contract was taken to the home of Mr. Crowder in Lawrence County by plaintiff on May 1, 1975 and the contract was gone over with Mr. Crowder. No objections were raised at that time to the contract.

"The contract was left with Crowder and some two weeks after that the plaintiff called him and was told that he decided not to sell.

"Plaintiff then contacted his attorney who corresponded with Mr. Harwell, Crowder's attorney and plaintiff's attorneys were advised that one of the problems that might be standing in the way of the consummation of the sale was the estate tax clearance of Mr. Leroy Davis' estate.

"Plaintiff then contacted Mr. Stewart Campbell and determined that he would re-execute a contract which would contain a further provision that the sale would not be closed until after the estate tax clearance on the Davis estate was received and further, that they would lease the property upon the same terms of rental that was in effect at that time.

"This proposal was likewise declined by defendants and shortly thereafter plaintiff filed this suit.

.　　.　　.　　.　　.

"On 28 April 1975, a contract for the sale of the real estate in question was entered into between Hillsboro Enterprises Inc., and the defendants for the sale of the property for $400,000.00, twenty nine per cent down with interest at seven and one-half per annum, balance payable in ten years. This sale was handled by Whitfield Realty Company in Franklin, and it should be noted that Mr. Stewart Campbell was one of the principal stock holders of Hillsboro Enterprises Inc., and that he, individually, was contracted by the broker from Whitfield Realty Co.

"The terms and conditions under which the real estate was sold were the same as had been offered earlier by Mr. Campbell except it was $25,000.00 cash earnest money instead of $40,000.00 in municipal bonds."

There is no serious controversy as to the correctness of the foregoing findings which are adopted by this Court. A few minor additional facts will be mentioned in the discussion of the contentions of the parties.

The first issue for resolution is whether, under the facts stated above, the plaintiff actually had a contractual relationship with defendants. (The agency of Mr. Crowder to speak for the other defendants is stipulated.)

Plaintiff first insists that a broker is one who is engaged for others, on a commission, in negotiating contracts relative to property of which he has no concern. *Krasner v. Moore*, 32 Tenn.App. 306, 222 S.W.2d 623 (1949).

■ However, a broker may act on behalf of the seller, the buyer, or both. In 12 C.J.S. Brokers § 14, pp. 36 et seq. it is stated that the identity of the principal of a broker is generally a question of fact. Where the facts are undisputed, however, the determination is more legal than factual.

In *Erwin Nat. Bank v. Riddle*, 18 Tenn. App. 561, 79 S.W.2d 1032 (1934), it was held

that where the compensation and expenses of a loan broker were paid by the borrower, the broker was the agent of the borrower.

In *Hamilton v. Galbraith*, 15 Tenn.App. 158 (1932), it was held that, where the owner of a farm employed a broker and *he (owner) alone paid the commission*, the broker was the agent of the seller alone and not that of the purchaser, even though the purchaser first consulted the broker about buying the farm.

■ Even though the identity of the party who is to pay the broker may not be conclusive of the identity of his principal, it is nevertheless a strong circumstance. In the present case, there is no evidence to show that the defendants specifically and expressly employed plaintiff as their broker. On the contrary, all of the evidence indicates that defendants merely stated orally that their farm was for sale on specified terms to whomsoever would purchase on such terms, through an agent or otherwise.

■ There is considerable difference in the legal effect of saying to a broker:

(1) You are authorized to try to sell my farm; and

(2) I will sell my farm on these terms to anyone. If you produce such a buyer, I will sell to him; but you will have to get your commission from him.

In the first instance, there is an informal employment as agent with implied agreement to pay a commission for producing a buyer, which may be enforceable, though oral. See *Lowe v. Wright*, 40 Tenn.App. 525, 292 S.W.2d 413 (1956) and authorities cited therein.

In the second instance, there is no agreement or expectation that the owner will pay any commission. This is merely an oral offer to sell land which is unenforceable. T.C.A. § 23–201(4).

■ Plaintiff insists that the obligation to pay a sales commission arises from acceptance of services *with knowledge or reasonable ground to believe* that such services are rendered with expectation of payment

therefor. In the present case, such expectation is negated by the admitted understanding that plaintiff was to receive nothing from defendants. Moreover, the services were not accepted. Defendants chose to accept an offer presented by another broker who was paid by his principal, the buyer.

In 12 C.J.S. Brokers § 61a, p. 139, is found the following text:

"To constitute an implied contract it is necessary and sufficient that the person from whom compensation is claimed consent to, or accept, the broker's services with knowledge or reasonable ground to believe that they are being rendered in his behalf, by the broker as such, with an expectation of receiving payment therefor. A contract of employment of a broker to sell realty cannot be implied after a flat refusal by the owner to pay a commission in absence of other acts of the owner which may be construed as an employment. A mere statement of the owner of realty to a broker that he desires to sell certain of his property is not sufficient as basis of a claim by the broker for compensation for procuring a purchaser."

■ Plaintiff cites authority for the liability of the owner to the broker for damages for wrongful refusal to sell even though the brokerage contract provided that the broker was to look to the seller for his commission. Such liability applies where there was an actual contract of employment. In the present case there was no express contract of employment, and the proffered terms of "no commission to be paid" prevent reliance upon an implied contract to pay commissions.

Plaintiff cites a number of Tennessee authorities in support of his insistence that he is entitled to commission from defendants.

■ In *Hammond v. Hood*, 31 Tenn.App. 683, 221 S.W.2d 98 (1948), this Court recited a lengthy chain of circumstances and conversations which were held to constitute an implied employment of the broker, and said:

". . . where a broker has been employed to sell real estate . . . he is entitled to his commission in case he produces a party . . . able, ready and willing to buy on the agreed terms." p. 695, 221 S.W.2d p. 103.

In the cited case, it was stated:

"it appears that other brokers were likewise active in undertaking a sale."

Plaintiff urges that the foregoing renders the cited case in point with the present case; however, in the present case, there was the specific refusal to pay any commission, and the offer to sell on given terms was open to all comers with or without the participation of a broker.

Plaintiff cites *Woodall v. Foster*, 91 Tenn. 195, 18 S.W. 241 (1892). In that case, the Court found:

"On September 6, 1890, defendants *employed* plaintiffs to sell certain lots . . ."

Also, a principal ground for allowing a recovery was the failure of defendant to notify plaintiff to cease his efforts when defendant sold the property.

Plaintiff cites *Cheatham v. Yarbrough*, 90 Tenn. 77, 15 S.W. 1076 (1890). In that case, the Court found:

"Cheatham placed certain real estate in the hands of plaintiffs for sale, agreeing to pay them a certain commission . . ."

The distinction is obvious.

Plaintiff cites *Parker v. Walker*, 86 Tenn. 566, 8 S.W. 391 (1888), wherein the Court states:

". . . plaintiffs approached the defendant and offered their services to sell a certain lot . . . The defendant . . . agreed to pay the usual commission . . . to sell same."

■ In short, plaintiff cites no authority, and none has been found, where, without an express contract, an employment and obligation to pay commissions is implied in spite of a specific disavowal of obligation to pay commissions.

■ It appears to this Court that the disavowal of liability for commissions re-

lieves the seller of any implied liability therefor; and, in such a case, any action for breach of contract should be based upon an express, rather than an implied contract.

It should be noted that the Chancellor did not find that plaintiff had a contract with defendants. His conclusion was based upon the premise that defendants allowed plaintiff to seek a buyer and then unreasonably refused to deal with the buyer, which was a finding of implied, not express, contract.

Plaintiff devotes considerable argument to the rights of an *employed* broker where the offer obtained by him is not identical with the terms of the listing. It is true that the offer presented by plaintiff was not identical with the terms demanded by defendant, and this might represent an additional, effective defense in the present action. However, the other grounds heretofore mentioned are adequate grounds for the results reached.

Plaintiff relies upon the presumption of correctness created by § 27–303 T.C.A. However, the result reached by this Court is not based upon a finding of facts different from that of the Chancellor, but upon a different conception of the legal effect of the admitted facts.

■ Where there is no conflict in the evidence as to any material fact, the questions on appeal are entirely of law. *Robinson v. Kemmons Wilson Realty Co.*, 41 Tenn.App. 297, 293 S.W.2d 574 (1956); *Continental Ins. Co. v. Cooper*, 58 Tenn.App. 316, 430 S.W.2d 661 (1968).

■ The statutory presumption of correctness relates to findings of fact and not conclusions of law.

For the same reason, the arguments of plaintiff as to credibility of witnesses are not determinative.

■ Plaintiffs rely upon the fact that the ultimate purchaser was a corporation which was solely owned by Mr. Stewart Campbell, the prospect produced by plaintiff. This fact would be a circumstance of fraud or sharp dealing if other necessary circumstances were shown, such as malice or ill will of defendants toward plaintiff such as to suggest a motive to defraud plaintiff of a fee, or a conspiracy between Mr. Campbell and defendants to defraud plaintiff, or a monetary advantage gained by plaintiffs by avoidance of payment of commission or sale for a higher price without broker's commission. No such motive is even suggested in the evidence. In fact, the sale which defendants ultimately made to a buyer who paid commission to another broker was somewhat less advantageous to defendants than the sale offered by plaintiff's prospect.

Lawsuits by brokers for commissions based upon oral contracts or implied contracts are numerous and usually present difficult questions for the courts. Much difficulty and litigation could be avoided by legislation adding to the Statute of Frauds all contracts with brokers relating to the sale of realty, thereby requiring such contracts to be in writing.

■ Real estate brokers are a necessary and beneficial part of a business community. They succeed and benefit the community in proportion to their industry, ingenuity, aggressiveness and persistence. However, the imposition of their services upon unwilling recipients and attempts to create contractual relationships and resultant liability for commissions should be viewed with some degree of strictness to prevent unwary members of the public from being victimized by the aggressiveness of the brokers.

■ A real estate owner who orally expresses a mere willingness to sell his property on certain terms does not obligate himself to sell to the first buyer produced by a volunteer broker.

For the reasons stated, the decree of the Chancellor is reversed, and the suit is dismissed. All costs including costs of this appeal, are taxed against plaintiff.

Reversed and Dismissed.

The original opinion has been abridged for publication.

SHRIVER, P. J., and DROWOTA, J., concur.