**David E. BARNETT, Plaintiff-Appellant,**

v.

**WATCO, INC., Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Sept. 13, 1984.

Application to Supreme Court
Denied by Supreme Court
Dec. 17, 1984.

Joseph L. Lackey, Jr., Nashville, for plaintiff-appellant.

Jack M. Irion, Bomar, Shofner, Irion & Rambo, Shelbyville, for defendant-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

Plaintiff, a manufacturer's sales agent, sued defendant, a sign manufacturer, for balance of $42,000.00 on commissions due for a sale to Shoney's Big Boy Enterprises in the amount of $417,000.00. The Chancellor rendered judgment for $1,818.98 in favor of plaintiff who has appealed.

The suit was filed on March 21, 1974, but was not tried until July 19, 1983. Judgment was entered on January 16, 1984, the record was received by this Court on April 17, 1984, appellee's brief was filed on June 26, 1984, and oral argument was heard by this Court on September 4, 1984. The record contains no explanation for the long delay in the Trial Court.

There is no material conflict between the testimony of the two witnesses who testified, the plaintiff on his own behalf, and Henry Tilford, President and Chairman of the Board for the defendant.

On May 23, 1972, Lew Finfrock, Vice-President and Sales Manager of defendant delivered to plaintiff a copy of an unsigned memo on the letterhead of defendant from Tom Watson, President of defendant, to Lew Finfrock. On the same date plaintiff and Finfrock initialed a note in the margin of said memo stating: "Eliminate Section 5"; and Section 5 was deleted by a line drawn across it. Said memo reads as follows:

May 22, 1972

Memo to: Tom Watson
Subject: Dave Barnett
 Meeting Sunday, May 21

I met with Dave Barnett Sunday at Nashville and he has at least tentatively agreed to come with Watco and we have agreed on the following:

1. Commission will be 12-1/2% of par prices and in exchange for the extra 2-1/2%, Dave Barnett will furnish his own car, gasoline and incidental expense.

2. Per our present policy, he will be allowed to sell up to 15% over par and we will split the overage with him.

3. Commission will be paid upon acceptance of any orders after credit approval and acceptance by the company. Commissions will be paid weekly.

4. All sketch requests and quote requests will be channeled through Lew Finfrock or TRW.

5. We will provide Dave with an area chart, showing the territory presently being handled out of Bowling Green and Nashville,

Eliminate
Section 5
T.W. L.F.

however, Dave is presently handling some national accounts that might fall within these areas, and I have agreed that he can handle them after checking with either Lew or myself in order that we do not double up relative to sales people calling on the same accounts.

6. He will have access to telephone at the Nashville office and we will reimburse him for long distance telephone calls as necessary.

7. Extraordinary expenses for travel on national accounts, after approval of the trip, will be reimbursed.

8. Dave will work on a straight commission basis, however, if necessary, we will put him on a weekly draw of $180.00 a week, should his accounts develop in such a fashion as to delay commissions. The $180.00 a week draw would of course be applicable to commission earned.

9. From time to time, we will assign him accounts to handle that normally come in by the result of mailing or telephone inquiries.

10. We will include him in our group insurance.

11. Dave's telephone number at home is Area Code 615–298–1624.

Tom R. Watson
cc: Lew Finfrock
kg

On the same date, May 23, 1972, the plaintiff and Lew Finfrock executed the following document:

## CONTRACT AGREEMENT

For and in consideration of $1.00 cash in hand paid by David E. Barnett of the first part, and Watco, Inc., receipt of which is acknowledged:

David E. Barnett, party of the first part and Watco, Inc., mutually agree to the following:

For any and all sign business brought to Watco, Inc. by David E. Barnett and accepted by Watco, Inc., Watco, Inc. agrees to make and deliver any sign or signs ordered by any persons or company through David E. Barnett. Watco, Inc. agrees to pay the usual commission for services rendered by David E. Barnett in bringing about the purchase and sales of such sign or signs.

David E. Barnett will receive commission for any sign or signs brought to Watco, Inc. by him regardless of whether any representative of Watco, Inc. has undertaken to sell a sign or signs to any person, firm, or company; it being understood that David E. Barnett is sole salesman of said signs and is entitled to full commission thereon on said sales.

Watco, Inc. agrees to make and deliver and install all signs procured by David E. Barnett and accepted by Watco, Inc.

This contract is entered into this 23rd day of May, 1972 and will continue until terminated by mutual agreement between the parties.

The agreement between the parties as set out above is a consideration accepted by both parties to bind each party to this contract. Witness our respective hands this 23rd day of May, 1972.

Watco, Inc. by:
(signed) Lew Finfrock
　　　　　Title: Vice President
(signed) David E. Barnett
David E. Barnett

On June 14, 1972, a 2 page instrument was executed evidencing a sale from defendant to Shoney's Big Boy Enterprises. The first page, bearing the corporate logo of defendant, reads in pertinent part as follows:

QUOTATION AND PURCHASE CONTRACT
(Quotation Valid only for 60 days
from Quotation Date)
Quotation No. 10521–15
Quotation Date 6/14/72

TO:　Mr. Keith C. Roberts
　　　Marketing Director
　　　Shoney's Big Boy Enterprise, Inc.
　　　1727 Elm Hill Pike
　　　Nashville, Tennessee　37210

FOR:　Various Locations of
　　　Shoney's Big Boy Restaurants

WATCO, Inc., a Tennessee corporation, hereinafter referred to as WATCO, proposes to manufacture for the above-named customer, hereinafter referred to as PURCHASER, the items described below, subject to the terms and conditions set forth below and on page 2 hereof. Prices quoted are for items to be manufactured only and do not reflect any quotations or contractual arrangements for freight, installation, connection, foundations or steel supporting structures unless specifically itemized.

| Quantity | Description | Amount |
|---|---|---|
| 60 | Double-face pylon displays to be manufactured and installed per print #10521–15 and as detailed in our letter of June 14, 1972. | |
| | $6950.00 each ................ | $417,000.00 |
| | BASIC SALE PRICE | $417,000.00 |

The second page of the document is a printed form containing detailed terms of the transaction and signatures of the parties. Pertinent parts of the second page are as follows:

ADDITIONAL TERMS AND CONDITIONS

1. WATCO shall not be responsible for errors in plans, designs, specifications or drawings furnished by PURCHASER or for defects caused thereby.

2. When accepted, this contract is not subject to cancellation, and no changes will be made or allowed unless such changes, and the price adjustment therefor, if any, are agreed upon in writing.

4. Items purchased under term of this contract will be stored by WATCO as a convenience to PURCHASER. Any items not shipped on or before 36 months from contract date will be invoiced in full at the designated unit price, and PURCHASER hereby agrees to pay said invoice within thirty (30) days from invoice date. It is agreed that storage charges shall accrue at the rate of one per cent (1%) per month of the price of the sign commencing at the end of said 36 month period.

10. When this contract is signed by a duly authorized person of each party, all provisions contained herein become integral parts of this contract, and there is no other agreement or understanding of any nature concerning same unless such other agreement or understanding, if any, is specifically incorporated herein by reference.

<u>(signed) David E. Barnett</u>
Sales Representative

This contract with all conditions as noted is herewith accepted by both parties at Shelbyville, Tennessee.

<u>Shoney's Big Boy Enterprises, Inc.</u> WATCO, Inc.
PURCHASER

By <u>(signed) Keith C. Roberts</u> By <u>(signed) Lew Finfrock</u>

Title <u>Marketing Director</u> Title <u>Vice President</u>

Guaranteed by <u>(signed) Hank Brunings</u>

Contract Date <u>6/14/72</u>

Page 2 of 2

Between June 14, 1972, and December 5, 1972—defendant delivered and collected for 8 of the 60 signs sold to Shoney's and remitted to plaintiff $868.75 commission on each sign, which was 12½% of the sale price.

On or near October 31, 1972, plaintiff received the following letter:

Dear Dave:

We are revising our commission schedules and agreements to become effective on January 1, 1973, and we would like to discuss this with you.

Could you please arrange to come down one day to talk this over and when you come, please bring your present commission and sales agreement.

Very truly yours,

(signed)

Henry

HCTjr:kg

On or near December 5, 1972, plaintiff received the following letter:

Dear Dave:

As I mentioned to you when you were in the office a week or so ago, we have decided to work the Nashville area with our salesmen from the Shelbyville office; therefore, you would not be representing us as a commissioned agent. In view of this, I am returning to you the bid quotes on Church's Fried Chicken, as we are not in a position to furnish you with any additional quotes.

We will handle all of the future Shoney's negotiations from this office. As Shoney's signs are installed, we will remit to you ⅔ of the commission. In accordance with our standard sales agreement, ⅓ of the commission is retained by the company to cover expenses for handling the account when the salesman or agent is no longer representing Watco.

Yours,

WATCO, INC.

(signed)

H.C. Tilford, Jr.

President

HCTjr:kg

Enclosure

Between December 5, 1972, and October 9, 1973, defendant delivered and collected for 10 more of the 60 signs sold to Shoney's and remitted to plaintiff $578.94 commission on each sign, which was 8⅓% of the purchase price.

On August 2, 1973, defendant and Shoney's entered into the following agreement:

MUTUAL AND JOINT RELEASE

WHEREAS, a Quotation and Purchase Contract was entered into between SHONEY'S BIG BOY ENTERPRISES, INC.

and WATCO, INC. on June 14, 1972, wherein Shoney's agreed to purchase sixty (60) double-face pylon displays to be manufactured and installed per Print No. 10521-15, as supplemented by Shoney's letter of June 14, 1972, for the total amount of Four Hundred Seventeen Thousand ($417,000.00) Dollars. Said construction to be completed within thirty six (36) months from the date of the contract; and

WHEREAS, Watco, Inc. has entered upon said contract with Shoney's and has delivered approximately *18* of the double-face pylon displays pursuant to same, but it has been ascertained by the management of both parties that it was not the intention of said original purchase contract to require that the specific number of displays setforth therein be manufactured for the total sum of Four Hundred Seventeen Thousand ($417,000.00) Dollars, but that instead this was only an estimate subject to change by either party; and

WHEREAS, because of this understanding of the parties it is necessary that modifications be made in the original contract to encompass the respective intentions of the parties as to number of displays to be manufactured, the price of same, and other factors necessary and pertinent to the final consummation of the Quotation and Purchase Order, and for the purpose of making said modifications the parties hereto agree to enter into a Mutual Release of the original contract dated June 14, 1972, and for that purpose, this instrument is executed.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises, and the further consideration of the mutual releases entered into between the parties, all of which is hereby acknowledged, SHONEY'S BIG BOY ENTERPRISES, INC. does hereby release WATCO, INC. from any and all obligations under and by virtue of the contract entered into on *June 14, 1972, and WATCO, INC. does* hereby release SHONEY'S BIG BOY ENTERPRISES, INC. from any and all obligations entered into on June 14, 1972, to the end that upon the execution of this instrument, said Quotation and Purchase Contract, a copy of which is attached hereto as Exhibit A to this Mutual and Joint Release shall be released, cancelled and for nothing held.

Nothing herein shall be construed as denying to either party the right to enter into a new contract affecting the purchase, manufacture and display of such number of double-face pylon displays as Shoney's may, from time to time, order, and Watco may, from time to time, agree to manufacture at such price to be mutually agreed upon between the parties hereafter.

Entered into in duplicate on this 2nd day of August, 1973.

Watco, Inc.

By (signed) H.C. Tilford, Jr., Pres.

Shoney's Big Boy Enterprises, Inc.

By (signed) Keith C. Roberts

Keith C. Roberts, Marketing Director

A part of the 10 deliveries mentioned above occurred after August 2, 1973, but the signs so delivered were already being fabricated on August 2, 1973, and were accepted and paid for by Shoney's after the execution of the August 2, 1973, agreement last above quoted.

Plaintiff made other sales to other customers for which his commission was paid. In some manner not fully explained, plaintiff was paid $1,654.63 more than the total commission which defendant intended that plaintiff receive.

The remaining 42 signs sold to Shoney's by plaintiff were never delivered.

Plaintiff testified without contradiction that he never agreed to a reduction in his agreed commission, that he was never given any reason for the termination of his relationship with defendant. He also testified that the ⅓ reduction in commission was not the "usual practice" in the industry, but this is contrary to the testimony of Mr. Tilford that such is the "usual custom". This bit of contradicted testimony is deemed immaterial.

The other witness, Henry Tilford, testified that 10% was the normal commission, that defendant had no written contract with any other sales agents, that he (Tilford) did not know about the additional 2½ % for use of auto, etc., that, as a result of a disagreement with Shoney's, defendant agreed to terminate the contract with Shoney's, that "Shoney's was not going to take the rest of the signs and there was no way we were going to sue Shoney's", that it was "the custom of the business not to force customers to honor purchase agreements", that, after the agreement to terminate Shoney's contract, Shoney's purchased 6 signs which were much more expensive, and that plaintiff was "terminated" because "I decided he was not going to do an adequate job in Nashville so we would handle Nashville sales from Shelbyville".

There is no evidence that there was ever any "mutual consent between the parties" for the termination of the contract.

Granting that such a contract might be terminated for some forms of misconduct or violation, there is no competent evidence of any conduct on the part of plaintiff which justified the termination of the contract between defendant and plaintiff.

No law has been cited or found which allows a seller and buyer to compose and execute a "release" reciting nebulous undefined conduct of a sales agent to be used as evidence of cause for cancelling the agents contract and for releasing the buyer from the obligation to perform a purchase contract negotiated by the agent, thereby depriving the agent of his rightful compensation for his efforts in procuring the sales contract. Since the agent was not a party to the "release" he is not chargeable with any of the statements therein which are, as to him, hearsay and inadmissible in any suit involving his rights.

This is not an action for wrongful discharge or wrongful termination in which the employee or agent seeks damages for lost future earnings. In this action the agent seeks only the earnings due him for the results of his efforts before discharge. The validity of discharge enters this case only as defendant asserts a custom to reduce the percentage of commission on a sale made before the discharge and delivered afterward.

Defendant's principal defense is that deliveries were not made because the sales contract was abrogated by mutual consent. In this respect the case is comparable to that of a real estate broker who is denied his commission because the seller and buyer have mutually agreed to rescind the sales agreement.

In *Deibler v. Graham*, Mun.Ct. of App. of D.C.—62 A.2d 553 (1948), it was argued that the agent's contract provided that commission was payable "out of the proceeds of sale" and that there were no proceeds because the parties to the sale had agreed to rescind it. The appellate court said:

It is fundamental that the parties to a sale may not agree to abandon it and compromise their differences and thereby deprive the agent of his commission without his consent.... A broker may not be deprived of his commission for services performed by subsequent acts of the parties without his consent. This was true at common law and remains so under the Maryland Code. (Citing *4 North Ave. Casino Co. v. Ferguson*, 130 Md. 376, 100 A. 628, *Pratt v. Realty Associates*, D.C.Mun.App. 45 A.2d 478, *Down v. DeGroot*, 83 Cal.App. 155, 256 P. 438, 12 C.J.S. Brokers § 58, 8 Am.Jur. Brokers § 184.)

In *Davidson v. Suber*, Tex.App.1977, 553 S.W.2d 430, it was held that, where an agent negotiates a contract which is specifically enforceable, he cannot be deprived of his commission because the seller chooses not to require performance.

In *Winchell Shoe Mfg. Co. v. Baehr*, 42 Ohio App. 88, 181 N.E. 823 (1931), a salesman's employment contract provided for payment on all orders accepted. The appellate court held that this required payment of commission on all orders accepted by the employer even though the orders were sub-

sequently cancelled by the seller or buyer or the goods returned.

In the present case the written contract of employment provided:

> For any and all sign business brought to Watco, Inc. by David E. Barnett and accepted by Watco, Inc., Watco, Inc. agrees to make and deliver any sign or signs ordered by any persons or company through David E. Barnett. Watco, Inc. agrees to pay the usual commission for services rendered by David E. Barnett in bringing about the purchase and sales of such sign or signs.

Thus the defendant had a duty to make, deliver, install and pay commission on all signs on the accepted order.

In *Conrad v. Wright & Co.* 309 Ill.App. 442, 33 N.E.2d 235 (1941), it was held that where a commission salesman produced and the seller accepted an order for coal which was acceptable to the purchaser, the seller could not avoid payment of commission because the coal could not be obtained to fill the order.

In the present case, the only excuses offered for non-delivery and non-payment are alleged but unproven. Of course, if the sales contract was unenforceable because of fraud or misrepresentation of plaintiff, defendant is excused for non-delivery; but, as stated above, there is no competent evidence that such is the case.

 As a result of all the foregoing, this Court respectfully disagrees with the conclusion reached by the Chancellor. In so doing, this Court has accorded to the judgment of the Chancellor the presumption of correctness unless the evidence preponderates otherwise. TRAP Rule 13(d). This Court has not disregarded the general rule as to the finality of the Chancellor's rulings on credibility. The presumption of correctness relates to findings of fact and not to conclusions of law. *Billington v. Crowder* Tenn.App.1977, 553 S.W.2d 590.

The disposition of this appeal is based upon uncontroverted facts and the law applicable thereto, to wit:

1. Plaintiff was engaged by written agreement to sell signs for defendant.

2. The written agreement provided that, when an order was procured by plaintiff and accepted by defendant, defendant was bound to deliver the order and pay plaintiff 12½% commission thereon.

3. Plaintiff did obtain and defendant did accept an order for 60 signs at $6950. each.

4. 8 of said signs were delivered and paid for, and plaintiff was paid 12½% commission thereon.

5. Thereafter, plaintiff was terminated without his consent and without cause.

6. Thereafter, 10 more of said signs were delivered and paid for, but plaintiff received only 8⅓% commission on these.

7. The plaintiff has evidently waived the shortage in commission on the 10 signs by the conclusion of his brief as follows:

> Your Plaintiff respectfully submits that he is entitled to a commission of twelve and one-half (12½%) percent on the remaining forty-two (42) signs that were contracted for between Watco, Inc., the Defendant herein, and Shoney's.

8. The remaining 42 signs were never delivered because defendant "released" the buyer from its obligation without any competent evidence in this record to justify the release.

9. Plaintiff has earned $1002.50 on unrelated sales.

10. Plaintiff has been paid a total of $15,396.53.

Based upon the foregoing, all of which is uncontroverted, this Court concludes that, as a matter of law, plaintiff is entitled to the following:

| | | |
|---|---|---|
| 1. Commission on 8 signs at 12½%""" | $ 6,950.00 |
| 2. Commission on 10 signs at 8⅓%""" | 5,791.66 |
| 3. Commission on 42 undelivered signs at 12½% """""""""""""""""" | 36,487.50 |
| 4. Commission on unrelated sales """ | 1,002.50 |

```
TOTAL DUE PLAINTIFF $50,231.66
LESS TOTAL PAID TO PLAIN-
TIFF 15,396.53
BALANCE DUE PLAINTIFF $34,835.13
```

The judgment of the Chancellor is modified to $34,835.13. Costs of this appeal are taxed against defendant. The cause is remanded to the Chancery Court for enforcement of the judgment and any other procedures which may be necessary and proper.

Modified and Remanded.

LEWIS and CANTRELL, JJ., concur.